Argued January 26, decided February 15, rehearing denied
October 18, 1910.

## WOLF v. HARRIS.

[106 Pac. 1016: 111 Pac. 54.]

DEEDS—VALIDITY—UNDUE INFLUENCE.

1. Where a party who was old, sick from an incurable disease, and broken in mind and body from the excessive use of stimulants, so that he was incapable of realizing the nature of the transaction, was induced to execute a deed which purported to convey the great bulk of his property to defendant H., to the exclusion of her brother and sister, whose claims were as great as her own, and the party, after his partial recovery, treated the property as his own and disposed of it by will, the deed will be set aside as obtained by fraud and undue influence.

DEEDS—EVIDENCE—UNDUE INFLUENCE—FRAUD.

2. Where the evidence discloses that the grantor at the time of executing the deed to the defendant, was old, sick from an incurable disease, broken in mind and body from the use of stimulants, and the difficulty that he labored under to understand the English language, the secrecy with which the transaction was conducted, together with the undue haste in recording the deed after the death and prior of the burial of the grantor, held sufficient to establish that the daughter took a fraudulent advantage of her father's age and weakness of mind to secure the deed, and the same will be set aside.

DEEDS—EVIDENCE—BURDEN OF PROOF.

3. Considering the relation of the parties, the frequently expressed intention of deceased to provide fairly for his other relatives, the fact that he had already made a will to effectuate that intention, the unreasonableness and injustice of the conveyance, the mental and physical weakness of the deceased and the secrecy observed concerning the transaction, the burden of proof was upon the grantee to establish by clear testimony that the deed in question was the voluntary act of the grantor.

From Wasco: WILLIAM L. BRADSHAW, Judge.

This is a suit by Will Y. Wolf, Isaac Wolf; Abraham Wolf, Hilda Wolf, Helena Loorya, Julius Loorya, Mary Haitwitz, Arnold Sheuerman, Carrie Sheuerman, an infant, by Will Wolf, her guardian *ad litem*, Yetta Phillips, Sadie Loveridge and Becky Wessels, against Esther Harris, Nathan Harris, Annie Harris, Zephora Harris and Milton Harris, to set aside and declare void a certain deed made by one B. Wolf, to the defendant, Esther Harris. From a decree in favor of plaintiffs, defendants appeal. AFFIRMED.

For appellants there was a brief over .the names of *Messrs. Bennett & Sinnott* and *Messrs. Beach & Simon,* with an oral argument by *Mr. Nicholas J. Sinnott.*

For respondents there was a brief over the names of *Messrs. Menefee & Wilson, Messrs. Long & Sweek* and *Messrs. Bernstein & Cohen,* with oral arguments by *Mr. Joel M. Long* and *Mr. D. Solis Cohen.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

This is an appeal from the decree of the circuit court of Wasco County, setting aside and declaring void a deed made by one B. Wolf to the defendant Esther Harris.

1. The testimony is voluminous and in many respects contradictory, but, we think, establishes clearly that the deed in question was procured by fraud and undue influence on the part of the grantee. The evidence satisfies us that, at the time of the execution of this instrument, the decedent, B. Wolf, was old, sick from an incurable disease, broken in mind and body from the excessive use of stimulants, and that he was therefore incapable of realizing the nature and quality of the transaction which resulted in his affixing his signature to the instrument in question, which purported to convey the great bulk of his property to the defendant, Esther Harris, to the exclusion of her brother and sister, whose claims were as great, or greater, than her own. The evidence shows that upon B. Wolf's recovery, or partial recovery, he treated the property as his own, and made a will bequeathing it and the income therefrom, just as any other owner of property might have done under the same circumstances, and we do not believe that he ever realized that he had conveyed it away.

These being our conclusions, it is needless to incumber the next volume of Oregon Reports with a discussion of the testimony in detail. We are of the opinion that the

findings of the circuit court are in accordance with the testimony, and its decree is therefore affirmed.

.                    AFFIRMED.

Decided October 18, 1910.

ON PETITION FOR REHEARING.

[111 Pac. 54.]

MR. JUSTICE McBRIDE delivered the opinion of the court.

2. We have again carefully gone over the testimony in this case in connection with the petition for rehearing. The deed was made when Wolf was in poor health, and it is evident that it was made at the instigation of the defendant. It was drawn by Mrs. Harris' attorney, and without the grantor having taken independent advice. It was kept by Mrs. Harris without putting it on record, and the agreement to pay $1,000 to her sister was also kept by her, and never came to light until the hearing of this cause. Mrs. Loorya says she never heard of the agreement, and this testimony is practically uncontradicted. It is true that Mrs. Harris testifies that her husband told Mrs. Loorya of its existence, but admits that she did not hear him tell her, and Mr. Harris was not called as a witness. Wolf remained in possession and control of the property, treating it as his own, and expressed himself satisfied with the will he had previously made, which declaration would have been entirely inconsistent with his having parted with the bulk of the property mentioned therein. His remarks to the clerk and others in regard to having made a lease of the property indicate that he did not know the exact nature of the instrument which he had signed. These declarations, made while he was still in possession, were, we think, admissible, and, if they were not, the previous efforts of the defendant to acquire the property, to the exclusion of other heirs, when taken in connection with the evident weakness of Wolf's mind,

satisfy the court that his age and weakness were taken advantage of by the rapacity of the defendant, and that he did not know or realize that he made a conveyance. The fact that after he had made it he transacted some business, such as buying hides, is not sufficient to alter this conclusion. It was a business in which he had engaged in for many years and which he would naturally transact, almost automatically, and without any particular tax upon his mind or memory. We have no doubt that the counsel who prepared the deed read it over to him, and we do not question the fact that he believed that Wolf understood it. But considering the difficulty that Wolf labored under in understanding English, and the further fact that counsel himself was affected by imperfect hearing, we do not believe that Wolf knew at any time that he was absolutely conveying the whole of his real estate. The secrecy with which the transaction was conducted, the fact that, immediately upon being apprised of her father's death, Mrs. Harris, not even waiting for his burial, had an agent at the clerk's office before 8 o'clock the next morning to record the deed, the fact that Wolf, in conversations with his confidential friends, in regard to the disposition of his property, never alluded to having made a conveyance, and the whole conduct of defendant convinces us, as it did the lower court, that she took a fraudulent advantage of her father's age and weakness of mind to secure this conveyance.

In our former opinion it was said inadvertently that the will was made subsequent to the deed. This was an erroneous statement, but it is disclosed in the testimony that, in conversations in reference to the disposition of his property held after the deed was made, he expressed his satisfaction with the will. The unnatural and unreasonable character of the transaction, taken in connection with the frequently expressed intention of the deceased to provide for other and more needy relatives, is a circum-

stance which in itself is some evidence that the deed was procured by fraud. It is evident that Mrs. Harris was in the most prosperous circumstances of any of the children of deceased. He had not infrequently expressed his intention to provide for the others, and no further to make her the recipient of his bounty. Mrs. Loorya especially was in indigent circumstances, and was not strong either in mind or body, and he had made a will providing fairly and properly for her and other indigent relatives, and it seems almost inconceivable that, in view of all the circumstances, he would deliberately and voluntarily change his settled purposes and make a disposition of his property so manifestly unfair and unjust. Referring to a will of a character similar to this conveyance, the Court of Appeals of Kentucky say:

"For such gross inequality no reason is suggested in the document itself or by the proof on the trial. The testator had an unquestionable power to make such a will. But its apparent unreasonableness requires satisfactory evidence that it was the free and deliberate offspring of a rational, self-poised, and clearly disposing mind. And all this has not in our opinion been shown by the testimony with sufficient assurance." *Harrel, etc.* v. *Harrel, etc.,* 62 Ky. 203.

3. Considering the relation of the parties, the frequently expressed intention of deceased to provide fairly for his other relatives, the fact that he had already made a will to effectuate that intention, the unreasonableness and injustice of the conveyance, the mental and physical weakness of deceased, and the secrecy observed concerning the transaction, the burden of proof was upon Mrs. Harris to establish by clear testimony that the deed in question was the voluntary act of deceased. This in our judgment she has wholly failed to do.

A rehearing is denied.

AFFIRMED: REHEARING DENIED.