## Bailey, et al. v. Waddy, et al.

(Decided May 30, 1919.)

## Appeal from Shelby Circuit Court.

1. Wills—Review—Evidence.—A verdict in a will contest, like that in any other case, will not be disturbed if there is any evidence to sustain it.

2. Wills—Undue Influence.—Undue influence cannot be presumed. Proof tending to establish its existence must be adduced. The fact that devisees or others had access to the testator or there was an opportunity to influence him is insufficient, where there is a want of evidence or facts tending to establish the want of free agency on the part of testator.

3. Wills—Contest—Evidence.—In a will contest all the contestants or contestees must fall or stand together. The evidence of one cannot be separated from that of the others; and the contestant having testified in the case, her husband was not a competent witness for her, nor for any of the other parties joined as contestants; that others were interested, in whose behalf he would have been a competent witness, does not affect the case.

BEARD & PICKETT and E. B. BEARD for appellants.

WILLIS, TODD & BOND for appellees.

Opinion of the Court by Judge Quin—Affirming.

By his will, dated November 4, 1916, George W. Waddy, who died the following June, disposed of an estate of the net value of approximately $20,000.00. He gave $100.00 each to an only sister and to a niece and two nephews, children of a deceased brother; $200.00 to an old servant, and $500.00 to the trustees of the Church of Christ, at Waddy, Ky. His wife was given the proceeds of a $1,000.00 insurance policy, certain livestock, household goods, etc. The balance of the estate was given to Milligan College, of Carter county, Tennessee, to endow in said institution what was to be known as the John W. Garvey Bible Chair, for the education of preachers. Certain conditions were annexed to the endowment—his wife, during her life or widowhood, to receive a sum equal to the annual interest on said fund at the rate of five per cent, payable January first of each year.

Testator, an ardent and enthusiastic member of the Christian church, was an elder, Sunday school superin-

tendent and teacher of the Bible class in the church at Waddy. The amount to Milligan College was to be known as the "G. W. Waddy and Susie Waddy Memorial Fund"—Susie Waddy was his first wife, and from whom he received a large portion of his estate. The mother of the testator at the time of her death owned about 156 acres of land in Shelby county, and this she devised in equal parts to her three children—testator, his sister and a son named Tom, now deceased.

Testator had never seen the college mentioned in his will, but knew it through articles appearing in the church literature, of which he was a constant reader. Satisfied doubtless that the principles of the Christian faith were taught in the Tennessee college, along lines in accord with his views and conceptions of the Bible, testator had an attorney in Tennessee draft his will, sending to him an outline of what he wanted. This was in 1914. The will was not signed then. Testator had a partial stroke of paralysis in October, 1916, and on November 4, 1916, executed the will in contest, in effect a redraft of the one written by the Tennessee lawyer, with the exception of the elimination of a provision for his first wife's mother, she having died in the meantime.

After the will was probated, the present appellants, the sister, niece and two nephews, filed suit to set aside the order of probate, on the ground of mental incapacity and undue influence, and from a verdict sustaining the will this appeal has been taken.

It is claimed the verdict should not be allowed to stand because it is flagrantly against the weight of the evidence.

From the testimony for contestants as given by several witnesses, including the sister, Mrs. Bailey, and three physicians, we find that testator had a very affectionate regard for his relatives; he had peculiar religious views; there was opposition to his second marriage; he did not know his property because he stated in his will that he wanted his debts paid, if any, when as a matter of fact he was $7,000.00 in debt; his mind was inactive after the first stroke of paralysis; however, the sister and others sought his judgment on a piece of property before purchasing it, and he furnished the money to pay for his sister's home; he was trustee for his sister and managed her estate until his death.

Had he been in his right mind he would not have made the bounty to a college he had never seen; in conversation he would be talking upon one subject, and suddenly change to another. Was not in his right mind because he doubted he was in debt, but he knew his relatives and his property.

He had embolism, which is thus defined in Webster's International Dictionary: "The occlusion of a blood vessel by an embolus." An embolus being "a plug brought by the blood current and lodged in a blood vessel so as to obstruct the circulation. It consists usually of a clot of fibrin, a shred from a morbid growth, a globule of fat, air bubbles, or a micro-organism." He was not the same man socially after the stroke. After a stroke of paralysis a person's mind is usually affected for different periods of time. There is seldom a complete recovery after such a stroke. A person is easily influenced after a paralytic stroke; one of the physicians admitted he thought testator's mind was clear until the day of his death, and when later recalled and asked to explain what he meant by this answer he says:

"I meant apparently he was all right, as far as his mind was concerned; as far as I can judge from a medical standpoint no man is right until the clot is entirely absorbed."

Another physician stated that he did not think a man competent to make a will "that will go and take money that some one else gave him and give it to somebody else," and the same witness thinks a man incompetent, though he surveyed large farms, settled matters as executor and administrator for different estates, assisted in laying off a county road and attended to business the same after the stroke as before. One of the witnesses said he did not think Mr. Waddy was himself at times; there was a difference in his speech. Another states he was not the same man after his first wife's death; this was about fourteen years before the will was written.

The foregoing is a substantial summary of the evidence introduced by appellants.

Many witnesses testifying in behalf of contestees say that testator was sound mentally, a good business man, devoted to his church, and they noticed no difference in the condition of his mind after he had the stroke of paralysis—acquaintances for forty odd years—lawyers, bankers and business men so testify. County Judge Ralph

Gilbert says that testator was a man of splendid mentality.

Testator was stricken on Monday; the following Wednesday he took supper at a friend's house, and on Saturday of the same week he attended a church meeting and an installation service of the Eastern Star, and made a speech on the latter occasion; the next day, Sunday, he taught his Sunday school class and presided at the communion.

A verdict in a will contest, like that in any other case, will not be disturbed if there is any evidence to sustain it, and after reading the record in this case we have no hesitancy in holding that the verdict is amply supported by the evidence.

It is said the court erred in refusing to give a tendered instruction on undue influence, but we fail to find any evidence that would have warranted the giving of such an instruction. As said in Talbott, Extx., et al. v. Giltner, 179 Ky. 571:

"By undue influence is meant an influence which obtains dominion over the mind of the testator to an extent that destroys free agency on his part in the disposal of his estate and constrains him in respect thereto, to do that which he would not have done if left to the free exercise of his own judgment, and it is not material when this undue influence was exerted if it was present and operating on the mind at the time the paper read in evidence was executed. . . .

"Undue influence can not be presumed. Proof tending to establish its existence must be adduced. Nor will the fact that the devisee or another had access to the testator, or there was opportunity to influence him, be sufficient to sustain the plea unsupported by evidence of facts which tend to establish the want of free agency on the part of testator."

The court did not err in sustaining the objection to questions propounded to the witnesses, Cozine and Powell, and the court properly ruled as to the testimony of the witness Landon Bailey, husband of the contestant, Louise W. Bailey, who had previously testified.

Sec. 606 of the Civil Code prohibits a husband or wife testifying against each other, and while it allows either to testify in a case such as this, it expressly provided that both can not.

It has been held that where the defendants are severally liable, and separate judgments may be rendered as to each, the wife of one is competent for the others. Dovey v. Lam, 117 Ky. 19, 77 S. W. 383. But a will contest is not a case of this sort. All the contestants or contestees must stand or fall together. The judgment establishes a status which must determine all their rights. The interest of one cannot be separated from that of the others. The husband of Mrs. Bailey was not therefore a competent witness for her, nor for any of the other parties joined with her as contestants. That others were interested in whose behalf he would have been a competent witness cannot affect the case. Civil Code, sec. 606, subsec. 1; Wise, &c. v. Foote, &c., 13 Bush 10; Williams v. Williams, &c., 24 Rep. 1326; Henning, &c. v. Stevenson, &c., 118 Ky. 318; Dunbar v. Meadows, 165 Ky. 275.

Perceiving no error in the judgment appealed from same is accordingly affirmed.