### Davis et al. v. Woods et al.

(Decided March 25, 1938.)

212

E. SELBY WIGGINS and O. P. JACKSON for appellants.

L. L. WALKER for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

Robert G. Boian died testate November 4, 1926, a citizen and resident of Garrard county, Ky.

By the first clause of his will testator directed that his executor sell all his personal property, excepting certain items, and also sell the farm he then owned, known as the George Allen farm, situated on Copper Creek turnpike in Garrard county, and empowered his executor to convey said land with fee-simple title to the purchaser thereof. By clause 2 he willed that his executor pay all his just debts out of the proceeds of said sale; and by clause 3 he willed that his executor pay to his, testator's, wife, Martha Boian, the sum of $1,000, and that his wife have all the personal property reserved in item 1. Clause 4 of the will, out of which this controversy arises, reads as follows:

"Fourth:—I will that my Executor invest the sum of Three Thousand Dollars in interest bearing notes or bonds and that the income from this investment be paid to my daughter Pearl Boian Davis in semi-annual payments and at her death I will that said Three Thousand Dollars go to the bodily heirs of said Pearl Boian Davis, share and share alike, provided, however, should the said Pearl Boian Davis survive her husband Bynum Davis, at the time of his death I will that my Executor give to my said daughter Pearl Boian Davis this said sum of $3,000.00 without reservation."

Other items of the will are not directly involved, but there being a question raised concerning the construction of clause 4 in reference to the creation of the trust fund, as it may relate to other clauses of the will, it becomes necessary to consider the will as a whole in arriving at a proper construction of clause 4. The other clauses of the will read as follows:

"Fifth:—After satisfying items two, three and four and paying the expense incidental to my estate, I will that my Executor pay the residue of money in his hands to my two daughters Dora Boian Davis and Addie Davis, share and share alike.

"Sixth:—I will my home place on Copper Creek turnpike adjoining land of Sam Davis and containing about 90 acres, to my wife Martha Boian for and during her natural life and at her death to

my three daughters, Pearl Boian Davis, Addie Boian Davis and Dora Boian Davis for and during their natural lives, with request that my said three daughters provide a fund of $1,500.00 to be paid to a duly qualified Guardian of my three grandchildren, to-wit: Loraine Davis, Robert Boian Davis and Ed Davis, and that each of said children receive the sum of $500.00 out of said fund when and as each attains his or her twenty-first birthday, and at the death of the first of my three daughters, viz Dora Boian Davis, Pearl Boian Davis, and Addie Davis, I will that said farm go to my grandchildren then living, share and share alike.

"Seventh:—I will that R. G. Woods of Paint Lick, Kentucky, act as executor and that he execute bond satisfactory to the court."

It appears that the executor experienced some difficulty in raising the entire trust fund provided in clause 4, or at least he was not discharging the trust to the satisfaction of the beneficiaries; in July, 1934, appellants (referred to hereafter as plaintiffs) brought this suit in the Garrard circuit court seeking to recover of the defendant executor the sum of $3,000, the corpus of the trust for the benefit of the contingent remaindermen, children of the plaintiff Pearl Davis, and the latter seeking to recover interest on the $3,000 trust fund from January 1, 1927, to the date of the filing of the suit. Plaintiffs Pearl Davis, Robert Davis, and Zilla Davis, all of whom were sui juris, sue in their own right and name, and the infant children, Earnest Davis, Ed Davis, George Davis, Fannie Davis, and Earl Davis sue by their next friend (mother), Pearl Boian Davis.

For their cause of action plaintiffs alleged that soon after the death of the testator, defendant, as executor of the will, took charge of the estate of testator and that there was $3,000 in the estate to be disposed of and handled according to clause 4 of the will; that defendant has never invested the said $3,000 as provided by the will and has never paid the plaintiff Pearl Davis the interest on the said $3,000 semi-annually, or otherwise, and that he has wholly failed to carry out the trust imposed upon him as executor and trustee under the will and has violated said trust and is indebted to plaintiff Pearl Boian Davis in the sum of the interest on the $3,000 at 6 per cent. per annum payable semi-

annually, from the 1st day of January, 1927, up to the date of filing the suit; that Pearl Davis is entitled on behalf of herself and her children, for whom she sues as next friend, to have defendant make a settlement of his accounts as trustee and that she is entitled to recover of him the interest on the said trust fund as provided in the will and that defendant be removed as trustee and executor under the will and to pay over the corpus of said trust fund to his successor, to be held for the benefit of her children, the contingent remaindermen. Plaintiffs also made E. L. Woods, surety on the bond of R. G. Woods, a party defendant. The prayer of the petition is in accordance with the allegations as we have indicated.

Defendants filed their answer and counterclaim traversing the allegations of the petition, and pleaded affirmatively that R. G. Woods, executor, had invested $427.50 in a note, secured by mortgage on real estate, and that he had collected the interest thereon and paid same to Pearl Davis; that on March 2, 1929, he invested $2,500 of said trust fund in a note signed by plaintiff Pearl Davis and her husband, J. B. (Bynum) Davis, which note is secured by mortgage on 136 acres of land in Garrard county, belonging to them, and that he made this investment at the earnest solicitation of Pearl Davis and her husband, in order to save their home for them, which was mortgaged to the Northwestern Mutual Life Insurance Company, and the plaintiffs were in default in payments and certain accumulated interest, to the insurance company, and that Pearl Davis borrowed said trust fund and secured it by mortgage and by reason of the fact that she owes interest on same there is no interest due her; that she had the use and benefit of said property and said money and that the investment was made for her benefit at her special instance and request; that he had the balance of said trust fund, $72.50, in cash and had not been able to invest it in notes or bonds as directed by the will. He further pleaded the interest which Pearl Davis owes on the $2,500 note as a counterclaim against any income that she is entitled to therefrom and asked that the interest on the $2,500 note be offset against the claim of plaintiff Pearl Davis.

Plaintiffs filed their reply denying the allegations of the answer, and by paragraph 2 pleaded affirmatively that on March 2, 1929, the plaintiff Pearl Davis did

not own the farm alleged by defendant to have been mortgaged to secure the said $2,500 loan, and that her husband, J. B. Davis, was the owner of said farm referred to by plaintiff, on which the Northwestern Mutual Life Insurance Company had a mortgage dated August 15, 1924, for the sum of $6,000, and that said farm was not worth, and could not be sold, for an amount equal to said indebtedness, and that plaintiffs offered R. G. Woods the said farm and agreed to make the insurance company a deed thereto in payment of their indebtedness to it. They admitted however, that R. G. Woods did on the 2d day of March, 1929, have Pearl Davis and her husband, J. B. Davis, execute and deliver to him a deed to said farm for the consideration of the then indebtedness against same and at the same time and place obtained from them a mortgage against said farm for the sum of $2,500, payable to himself; that they, nor neither of them, ever at any time received said $2,500, or any part thereof; that no money or credit was ever passed from R. G. Woods to either of them, and that R. G. Woods had since said time sold the farm. They further pleaded that R. G. Woods had never invested the said $2,500 and has same in his possession and neither of plaintiffs or R. G. Woods has any interest or principal on any loan whatever. By agreement of the parties the affirmative matter in the reply was controverted of record, thus completing the issues.

To sustain their action, plaintiffs called as their first witness, defendant R. G. Woods, as if on cross-examination. Mr. Woods testified that he received the sum of $3,000 provided in clause 4 of the will, and had $500 of that sum in cash and the note of $2,500 of Pearl Davis and her husband, J. B. Davis, secured by a mortgage. At the time the suit was filed defendant had $72.50 cash in his hands but in the interval between the time of filing the suit and giving his depositions he had collected $427.50, which he had loaned on interest as set out in his answer. He testified that he had collected and paid to Pearl Davis the interest on the $500 and that he had loaned to Pearl Davis and her husband $2,500 for the purpose and under the circumstances set out in his answer and to secure same he had a second mortgage on 136 acres of land, but he had not collected or paid to plaintiff interest on the $2,500 because the interest was set off by agreement with Pearl Davis as rental of house, garden, and grass pasture for stock on

the farm. He admitted that the title to the farm was in J. B. Davis, husband of Pearl Davis, but that she solicited and consented to the loan to her by him of the $2,500 trust fund in order to save their farm as a home for herself and her children. He said that he did not turn over the $2,500 to Pearl Davis and her husband but by their consent and pursuant to agreement with them he paid certain debts for them and set out in detail the items paid. He said he paid a debt of $500 for J. B. Davis owed the estate of the testator and interest $107.50, and $49.87 that J. B. Davis owed the estate of testator for articles bought at the sale of the personal property, and that he paid a note for $154.35 of J. B. Davis to the Garrard Bank & Trust Company which testator had signed as surety, and he paid the insurance company $1,000 on the mortgage and interest in the sum of $181.23, thereby reducing the first mortgage against the land to $5,000. He also paid $127.17 taxes on the farm of plaintiffs which plaintiffs mortgaged to secure the debt of the insurance company and on which he took a second mortgage to secure the $2,500 loan; that he paid off a lis pendens lien against the farm in the sum of $100 to T. J. Underwood and bought grass seed, fertilizer, oats, etc., for J. B. Davis to use on the farm, amounting to $359.13, and also paid him $40 in cash to pay for work in his tobacco crop, and that these sums amounted to a few dollars over the $2,500. He denied that he was agent for the Northwestern Mutual Life Insurance Company, but was merely a correspondent. He said that at the time he made the $2,500 loan to plaintiffs he considered the farm, which they mortgaged to secure the loan, worth $9,000 at that time. However, due to the depreciation in price of real estate he later sold the farm for $7,700, which was a sufficient amount to take care of all the debts against it, including the $2,500 in controversy, except that it would leave a shortage of approximately $300 delinquent interest to the insurance company. He said that he had collected $600 on the sale of the farm and under the contract of sale the purchaser thereof was to pay $300 per year until it was paid for in full. He said that nearly $800 of the $2,500 loan was paid into the estate of R. C. Boian, the testator, on debts and obligations owed by J. B. Davis to the estate, and this $800 was a part of the fund necessary to create the $3,000 trust. He said that the estate of testator was not sufficient to

pay the debts and leave the $3,000 trust fund unless he collected the $800 from J. B. Davis; that he had settled the interest account with Pearl Davis on the $500 over and above the $2,500 loan, every year except for the years 1933 and 1934, and that the interest on the $2,500 loan was by agreement not to be paid to plaintiffs as long as they resided on the farm and used it, and that they remained on and used the farm until January 1, 1934, and that he was not indebted to Pearl Davis for interest in any sum up to that time.

It appears that at the time defendant executor took the mortgage to secure the $2,500 loan plaintiffs also executed to him a deed to the property with the understanding that he, Woods, was to hold the deed and not have it recorded and give plaintiffs a chance to pay the $2,500 secured by the mortgage, but that in the event they failed to pay the mortgage debt he would then have the deed recorded and they would then give him possession of the farm and thereby save the cost and inconvenience of going through with foreclosure proceedings on the mortgage. About January 1, 1934, defendant had the deed recorded and plaintiffs relinquished possession of the farm and have not used it since that time.

Defendant was asked to explain how he expected to collect the $2,500 note of plaintiffs which was secured by the mortgage on their farm, and he said that he would have the notes of C. V. Causey to whom he sold the farm in the place of plaintiff's note, amounting to $2,200, and still had the note of Pearl Davis and J. B. Davis to the amount of $300, and still had the investment of cash amounting to $500. He said, however, that the $300 note of plaintiffs might not be collectible and probably lost.

Later the depositions of R. G. Woods were taken in his own behalf and his evidence was substantially along the same lines as given by him on cross-examination. At that time he had filed a settlement of his accounts and his evidence tends to substantiate the allegations of his answer. He filed copies of letters between himself and Pearl Davis indicating that he had been paying her interest on the $500 of the trust fund over and above the $2,500 loan in question; and the letters and checks filed by him indicate that she had been receiving interest on the $500, but it does not ap-

pear that there was any controversy or dispute between them regarding interest on the $2,500 loan.

Defendant Pearl Davis gave her depositions and testified that R. G. Woods did not come into possession of the $3,000 trust fund until about three years after her father died; that he had paid her interest in the sum of $55.80. In reference to the farm mortgaged to R. G. Woods to secure the $2,500 loan, she stated that it was her husband's farm and that the insurance company had a mortgage on it to secure a $6,000 loan, $1,000 of which was going to the estate of her father. She said that at the time the $2,500 loan was made, as claimed by R. G. Woods, the farm mortgaged to secure it was not worth the indebtedness against it, and that her husband offered to deed the farm to Woods in satisfaction of the indebtedness against it. She admitted that she and her husband executed the deed and mortgage to Woods to secure the $2,500, but said that she nor her husband did not receive any of the money. She admitted that she, her husband, and children resided on the farm and used it until January 1, 1934, and that she paid no interest on the $2,500 loan. In cross-examination she admitted that she understood that the $2,500 loan of the trust fund was to be applied to the indebtedness against the farm to save it from being sold for same. She also admitted that she knew at the time she signed the deed and mortgage that the $2,500 was part of the trust fund created for her by her father's will and the deed and mortgage was intended to secure that fund. She was asked if she understood that the possession of the farm was to offset the interest on the $2,500 note, and she answered:

"Yes, I understood that was put in there to pay my interest; that I was to get my interest on the $2,500.00."

She further contended however, that she was expecting to get interest on the $2,500, notwithstanding that that sum was applied to indebtedness against the farm to keep it from being sold, in order that she, her husband, and children could remain on it as a home. She said that she thought that Mr. Woods was to invest the money for the purpose of getting her interest.

In these circumstances it is difficult to understand why Mrs. Davis would expect Mr. Woods to pay her interest on the $2,500. She had the benefit and use of

the money and there was no source from which he could get interest unless she paid the interest to him and he in turn gave it back to her, which, of course, would have accomplished nothing. Her evidence does not seriously, if at all, contradict R. G. Woods on the essential points. It is obvious that she consented to R. G. Woods making the loan of the trust fund to her and her husband and for the purposes stated.

J. B. Davis, husband of Pearl Davis, gave his depositions, which were objected to on the ground that his wife previously testified, and exceptions were filed to his depositions, which the court sustained, and that ruling of the court is involved on this appeal. It is insisted that if J. B. Davis' testimony is incompetent so far as his wife is concerned, it is competent in behalf of other plaintiffs, their children.

It is pointed out by the chancellor, as reasons for sustaining the exception, that Pearl Davis herself is interested in the corpus of the trust fund, its preservation intact; for her income therefrom is directly affected by any impairment of this fund; that the gist of the suit is that defendant trustee has mismanaged the trust estate and impaired the corpus, and that while Mrs. Davis alone is interested in the income of the trust estate, yet the evidence of her husband is offered in support of this charge of mismanagement and impairment of the trust estate, and his evidence necessarily affects her rights and interests as well as those of the children; and that his testimony cannot be so separated so as to confine it only to the interest of the children in the trust fund, inasmuch as the status to be established is for the benefit of all beneficiaries alike; and, furthermore, under the terms of the will Pearl Davis may herself be entitled to the corpus of the fund, contingent upon her outliving her husband. Bailey v. Waddy, 184 Ky. 451, 212 S. W. 459.

It is our view that the chancellor properly sustained exceptions to the depositions.

Defendants filed exceptions to the depositions of Pearl Davis and other witnesses who testified after plaintiffs had taken the depositions of R. G. Woods as if on cross-examination. The court overruled these exceptions—holding that the taking of the depositions of R. G. Woods as if one cross-examination did not preclude plaintiffs from taking other evidence. See Bark-

ley v. Bradford, 100 Ky. 304, 38 S. W. 432, 18 Ky. Law Rep. 725; also the recent case of Hutchins et al. v. Foley et al., 271 Ky. 104, 111 S. W. (2d) 586. These authorities are conclusive that the chancellor correctly overruled these exceptions.

The depositions of other witnesses were taken for plaintiff, but their evidence relates to the use and occupancy of the farm and other collateral questions not connected with the contract or understanding between the parties relating to the loan and use of the $2,500 trust fund involved.

After passing on the exceptions to the depositions as we have indicated, the chancellor first considered the construction of the will. Plaintiffs insist that it was the duty of the executor to first create the trust fund as provided in clause 4 before satisfying clause 5.

In the written opinion of the chancellor he analyzed each clause of the will and reached the conclusion that it was the intention of the testator that the trust fund was to be created out of the proceeds of the sale of the personalty and real estate directed to be sold by clause 1 after first paying the debts of the estate and the bequest to the widow. It is pointed out by the chancellor that the will was written in 1921, five years before the death of the testator and evidently the testator considered that the proceeds of the sale of the property mentioned in item 1 would be sufficient to create the $3,000 trust fund and that there would be something left of the proceeds which he gave to Dora Boian Davis and Addie Davis. But owing to the depreciation in value of property at the time the property was sold there was nothing left to pass under clause 5, and, that the devisees under that clause were given land of testator, seemingly at an agreed valuation, and by agreement of the others interested. The chancellor concluded that the executor violated no duty to the beneficiary of the trust fund so far as its creation was concerned. The chancellor next considered the creation of the trust fund, the circumstances and facts leading up to the loan of the $2,500 to appellants, the propriety or advisability of such loan, viewed in the light of the manner in which it was secured, and the rights of all parties concerned.

The learned chancellor wrote an elaborate opinion dealing with all phases of the case, setting out his find-

ing of fact and conclusions of law applicable thereto. We will state only the substance of that opinion, including certain authorities cited in support thereof.

The chancellor reviewed the items going to make up the $3,000 trust fund, which included the note of J. B. Davis for $630, owing the estate of the testator and secured by second mortgage on the farm of J. B. Davis. But ahead of this lien there was a first mortgage to the Northwestern Mutual Life Insurance Company for $6,000, plus taxes and another debt secured by lis pendens, making a total indebtedness in the excess of $6,400. The executor had loaned from this fund $500, which has now been collected. The executor then loaned the $2,500 to J. B. Davis· and Pearl Davis, securing it by a second mortgage on the farm of J. B. Davis, but at that time he applied on this first mortgage $1,181.23, thus reducing the senior lien to $5,000. The chancellor then asked this pertinent question:

"Was that such a loan as is authorized to be made by a trustee under the laws of Kentucky?"

But before determining that question, the chancellor discussed the circumstances under which the loan was made, and why it was made so far as it may affect the claim of Pearl Davis for interest that she has not been paid on that loan. He then reiterated the circumstances and reasons why the loan was made, in substance, as that set out in defendants' answer and detailed in the evidence. The chancellor concluded that inasmuch as Pearl Davis agreed and consented to this loan and that the interest be not paid to her while she and her family lived on the farm, she cannot now repudiate that agreement. The chancellor said:

"She is of age, and a cestui que trust, sui juris, may bind himself by consenting to an investment of the trust fund, even if otherwise it would not be a valid investment of the fund. (Bowling v. Bank of New Haven, 219 Ky. 731, 294 S. W. 499; 26 R. C. L. page 1311; Pomeroy's· Equity Jurisprudence, 4th Edition, vol. 3, page 2467; 65 C. J. Page 817.) The authorities cited qualify the rule to this extent, that the cestui que trust must have acted with full knowledge of the facts and circumstances, and his or her agreement must have been obtained without fraud or duress. Nothing appears here to subject the present agreement as to

this investment to any such qualification. A married woman is competent to bind herself in this way. (Pomeroy's Equity Jurisprudence just cited, at page 2467, note to the text.) And under the broad powers conferred upon married women by our statute, certainly it would seem necessarily to follow that in Kentucky she can bind herself by such an agreement.''

The chancellor further held that while this agreement on the part of Mrs. Davis was binding on her so far as the interest on the $2,500 is concerned, yet she could not by this agreement bind the children interested as remaindermen in the corpus of the trust; that while she might become entitled to the corpus in the event she outlived her husband, this contingency cannot be permitted to obscure the fact that the children under the will also might become entiled to the corpus, and the court cannot disregard the contingent interest of the children and look at the matter just as if Mrs. Davis alone was interested.

The chancellor concluded that the loan of the $2,500 secured by a second mortgage was not such a loan as could be approved by the courts. He cited many authorities in support of his conclusion, including Gee v. Womack, 203 Ky. 718, 263 S. W. 6, construing section 4706, Kentucky Statutes; Pomeroy's Equity Jurisprudence, vol. 3, pp. 2459 and 2463; 26 R. C. L. 1306; Kentucky Statutes, secs. 4706 and 4708; Hacketts' Ex'r v. Hackett's Devisees, 180 Ky. 406, 202 S. W. 864.

The chancellor found that the executor was authorized under the will to invest the fund in notes secured by mortgage on real estate, which he did, and construed the deed of conveyance, which was taken at the same time the mortgage was executed, to have the effect only of a mortgage. Vansant v. Spillman, 193 Ky. 788, 237 S. W. 379.

The chancellor then referred to the total amount of liens and indebtedness against the farm of J. B. Davis and that the evidence for defendants showed the farm to be worth $9,000 or $10,000, while the evidence of plaintiffs fixed its value at a lower figure, and that the loan would have represented 75 per cent. or more of the value of the farm.

In speaking of investing trust funds in second

mortgage security, the court cited Pomeroy's Equity Jurisprudence, vol. 3, p. 2463; 26 R. C. L. 1312; 65 C. J. p. 803, and quoting from the latter two citations as follows:

"As a general rule, a mortgage on real estate encumbered by prior liens, is not regarded as a safe investment, and the fact that the property was sufficient at the time the loan was made to meet all demands against it, will not excuse a trustee who invests in encumbered property."

In 65 C. J. p. 803, the text says:

"Generally speaking a mortgage on real estate previously encumbered by prior liens is not such an investment as a trustee is authorized to make, even where he is clothed with large discretionary powers." See, also, Tuttle v. Gilmore, 36 N. J. Eq. 617; Clark v. Anderson, 13 Bush 111, 119; Vickers v. Vickers, 189 Ky. 323, 225 S. W. 44.

With reference to the rights of the cestui que trust to have the trust fund restored, and the adjustment of the matters as between the plaintiffs and defendants, the chancellor wrote:

"The plaintiffs are seeking to have the original trust fund restored. This form of relief, where an improper investment has been made, is open to the cestui que trust. 65 C. J. sec. 700, p. 818. In such a state, the trustee is liable for the value of the trust fund at the time he received them; he cannot be charged with the face value of any securities as received without adequate proof that such was their actual value when he received them. 65 C. J. p. 822, sec. 703. What, then, must be done to restore this trust fund, that was loaned on this second mortgage, to its status just before that was done?

"The evidence shows of what this $2,500 loan consisted According to the testimony of defendant, R G Woods he had in the trust fund at that time $1,800 cash. He added to that the debt that Bynam Davis was owing the estate of testator, which he says was $630. The cash and this $630 he says made up the $2,500. The cash must have been $1,870 instead of $1,800 for him to be able to create the $2,500. Whatever the exact amount he

then had in cash and put into the loan must be restored to the fund, to re-create its then status. As to the remainder, represented by the $630 obligation of Bynam Davis, it was secured by a second mortgage on this farm, with senior lien debts ahead of it aggregating in excess of $6,400. It is but the reasonable inference from the evidence that the only value it (J. B. Davis' $630 note) possessed at that time was the value afforded by this second mortgage securing its payment; that Bynam Davis had no other property out of which it could have been realized, in whole or otherwise. When it was passed into the trust fund at the time this loan was made to Bynam and Pearl Davis, the security for its repayment was the second mortgage taken for the repayment of the entire loan of $2,500. Ahead of this was a first mortgage to the insurance company for $5,000. At the time this second mortgage was taken by the executor, he paid off with the cash he was lending to Bynam Davis $1,408.40 of the prior lien debts. He paid, to go into details to this, $1,181.23 on the debt of the insurance company, $127 of taxes against this farm, and in arrears, and $100 to a creditor of Bynam Davis who had a lis pendens on the land. All that the beneficiaries properly can require of the trustee, as to this $630, is, that it be restored to the same rank as a second mortgage debt that characterized it before the loan was made.

"The defendants, or that one of them who makes this restoration of the fund, will be entitled to have transferred to him, or them, the benefit of this second mortgage security to that extent. That accords with the principle applied in Harris, Guardian, v. Preston et al., 153 Ky. 810, 156 S. W. 902; Gee v. Womack, 203 Ky. 718, 263 S. W. 6. So far as the payment represents the $1,408.40 that was applied to retire prior liens, it will have a lien senior to the $630. And this last sum's security under that mortgage will be senior to that of the remainder of the restoration payment. I infer from the proof this second mortgage is yet in force. While the executor has undertaken to sell the farm, the sale is subject to this mortgage, and apparently evidenced simply by title bond. I have already given my view of the effect of the conveyance to

the executor at the time the mortgage was executed; but the purchasers are not parties to this suit, and their rights, of course, cannot be determined in this action.

"The remaindermen in the trust fund have the right, on proper showing, to have an accounting. 65 C. J. p. 882. Though the tenant for life agreed to the improper investment, this will not bind the remaindermen. White v. Sherman, 168 Ill. 589, 48 N. E. 128, 61 Am. St. Rep. page 140. They, therefore, are entitled to require this fund to be withdrawn from this investment, and have the fund restored to its status as before this loan was made.

"But as to Mrs. Pearl Boian Davis, the situation is different. I think the evidence establishes she agreed to this investment being made, secured by this second mortgage; that she then knew of the prior lien debts against the farm; that she knew that shortly before this the farm was offered at public sale, and no one would bid for it the lien debts against it; that she knew the farm at that time had been advertised for sale to satisfy delinquent taxes against it; that the insurance company was insisting upon payment of the interest in arrears on its debt; that she was anxious to avoid foreclosure proceedings, and knew by this second mortgage and the executor satisfying the taxes and paying the back interest and paying $1,000 on the principal owing the insurance company, this could be avoided, and desired the executor to make the loan. Having agreed to this, she can not now be heard to insist the executor violated his duty to her as beneficiary in the trust in making such an investment. Says Pomeroy, vol. 3, p. 2467, already cited, in this connection: 'It should be carefully observed, in this connection, that if the beneficiary is sui juris, and competent to bind himself, his consent to the irregular investment would be a justification of the trustee's action, and a waiver of all claim against him for resulting loss.'

"As far as Mrs. Pearl Boian Davis is concerned, she is not entitled to have the trust fund restored. Whatever loss to the principal has occurred because of this second mortgage loan, she is by her agreement precluded from complaining of.

The executor must restore this fund, not for the benefit of the life beneficiary, but for the remaindermen. Any loss he undergoes in doing this results from his having made an investment which the life holder approved of. She has a contingent interest in the corpus of the trust. To the extent of any loss he (Woods) sustains in making the restoration, I think he should be adjudged a lien on this contingent interest of hers. That appears to be in harmony with the rule adopted in Furniss v. Zimmerman, 90 Misc. 138, 154 N. Y. S. 272, cited in 65 C. J. p. 818, and is equitable. But as she will herself suffer loss of her income resulting from any impairment of the corpus of the fund, on account of this investment which both she and the executor approved of, and to that extent bear the consequences of this unfortunate investment, I do not think any lien should attach to this income, in favor of the executor. This adjustment, it seems to me, is in keeping with the principle applied in equity that relief should be moulded and adapted to the circumstances of each case.

"As I have said, while the executor also took a conveyance of this land from Davis and wife, the transaction was simply a mortgage. He treated it, on default, as a sale, however, and not as a mortgage. Mrs. Davis and her husband surrendered possession of the farm in January, 1934, due to his urging. He did not foreclose and have determined just what loss, if any, had resulted to the trust fund by reason of the loan. That has not yet been determined; but Mrs. Davis has received no income since that time. The executor should be charged with interest, in her favor, on this trust fund from the time she surrendered this possession. What that should be depends upon the determination of the loss to the corpus of the fund. He will owe her the income from the corpus when thus determined, from after January 1, 1934, until paid, with semiannual interest. Upon his settlement, he will be entitled to offset against such income his compensation for his services, and any credits to which he may properly on the settlement appear entitled.

"It appears that the executor admits that he has not paid Mrs. Davis the interest on the remain-

der of the trust fund, not included in this investment, and amounting to $500, for the years 1933, 1934. She is entitled to have this paid, with semiannual interest on each installment from the time due. I think the evidence of Mrs. Davis supports his (Woods) claims that he had paid the interest on this $500 up to those years.

"The defendants' counterclaim is dismissed.

"The prayer of the plaintiffs that the trustee he removed is not granted. I am convinced the latter in all that he did acted from no improper motive. He was trying to save a home for Mrs. Davis and her children. In trying to do this, he took chances the law does not sanction, so far as concerns a trustee. Evidently, he acted without the benefit of legal advice. He did not realize 'he must possess such legal knowledge as is needful to the proper execution of the trust,' and as the rule is expressed in Durrett's Guardian v. Commonwealth, 90 Ky. 312, 318, 14 S. W. 189, 12 Ky. Law Rep. 207. But he realizes that now. He is, I am satisfied, competent to handle this trust."

Judgment was entered in accordance with the opinion, and to reverse that judgment plaintiffs have appealed from so much of it as denied plaintiff Pearl Davis interest on $3,000 from January 1, 1927, until paid, and they further insist that R. G. Woods should be removed as trustee or executor of the will.

Defendants have cross-appealed, insisting that the chancellor erred in holding the trustee, R. G. Woods, liable to the children of Pearl Davis because he invested a part of the trust fund in a note secured by a second mortgage. The argument is that the trustee acted in good faith and that an investment of trust funds secured by a second mortgage is no violation of the trust when the trustee acts in good faith and exercises prudence and care in making the investment. It is further insisted in behalf of the cross-appeal that at the time the trustee made the loan and took the second mortgage on the land, it was reasonably worth all the indebtedness against it and would have produced a sufficient sum to have paid all the indebtedness but for the unforeseen depression and depreciation in price of real estate, and, therefore, he ought not be required to account for any loss and should not have been re-

quired to execute bond to the children of Pearl Davis, the contingent remaindermen, as was required by the judgment of the chancellor.

The rule contended for by defendants on their cross-appeal is applicable in proper cases, but the facts disclosed in this record fail to justify the application of that rule in this case.

There is no escape from the conclusion that the children of Pearl Davis are not bound by the agreement or bad judgment of their mother and the executor. As to the rights of Pearl Davis to the interest on the trust fund, the judgment of the chancellor was not based upon the question of whether or not the executor acted in good faith, but upon the fact that she consented to the loan and investment and agreed to waive interest so long as she occupied and used the farm mortgaged to secure the loan. We also think that, for the reasons set out in the chancellor's opinion, his refusal to remove R. G. Woods as trustee should be sustained.

So much of the chancellor's opinion quoted herein is approved and adopted by this court. The finding of fact by the chancellor and his conclusions of law applied thereto being in harmony with our views, the judgment is affirmed on both the original and cross-appeals.