## Helm's Guardian v. Neathery.

(Decided October 26, 1928.)

### Appeal from Cumberland Circuit Court.

1. Wills.—Person of sound mind and not under undue influence has right to dispose of his property as he pleases, even though the disposition be contrary to the dictates of his natural and moral obligations:

2. Wills.—Mere inequality in the disposition of one's estate is not sufficient evidence of mental incapacity or undue influence to take the case to the jury in the contest of a will.

3. Wills.—Other evidence, in addition to gross inequality in the disposition of one's estate, will make question for jury in will contest whether testator had sufficient mental capacity or was unduly influenced.

4. Wills.—If, under all circumstances of the case, a will is unnatural in its provisions and inconsistent with the obligations of the testator to the different members of his family, the propounders of the will have the burden to give some reasonable explanation of its unnatural character.

5. Wills.—Where testatrix disinherited her child, who was of such tender years that there was no possibility of child having done anything that could justify mother's conduct, and prior to testatrix's death she was living with her parents away from husband's home, and the husband retained custody of child, evidence of undue influence in contest of will held sufficient to take case to the jury.

TANNER OTTLEY for appellant.

C. R. HICKS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—Reversing.

Lizzie Helm died on June 27, 1927, survived by her husband, Aubrey Helm, and a son, Ray Helm, who was then about 3 years of age. She left a will dated May 2, 1927, by which she bequeathed to her brother, Frank Neathery, all her estate. This will was duly probated by the Cumberland county court, and in due time an appeal was prosecuted to the Cumberland circuit court by the infant's guardian, Aubrey Helm. At the conclusion of the evidence, the court sustained contestee's motion for a peremptory instruction. From a judgment in conformity with the verdict, this appeal is prosecuted.

On the trial, the propounder proved the due execution of the will, and introduced further evidence to the effect that at the time of its execution the testatrix was of sound mind. Thereupon the contestant introduced evidence tending to establish the following facts: The testatrix was about 24 years of age. She and Aubrey Helm, the father of contestant, were married on August 19, 1923. After their marriage, they lived with Aubrey Helm's mother. Her home is about 2½ miles from the Neathery home. There was no friction between the testatrix and her husband. During this time the testatrix endeavored to obtain the property left to her by her father, and complained of the fact that it was not given to her, saying of her family, "They want it theirselves, they want to get it away from me." Some time later she developed tuberculosis. Her husband arranged with Dr.

Keen to treat her. During the earlier stages of her illness she went to the doctor and got medicine. In the autumn of 1926, her mother took her to her home. Living in her mother's household were her sister, Annie Smith, and the contestee. Occasionally the testatrix would return to her own home, and now and then she was accompanied by her sister, Annie Smith. She made these visits until the roads got so bad she could not come. Every now and then Aubrey took Ray to see his mother. Aubrey suggested that she go to a hospital, but Annie objected. The testatrix stated that she wanted her child to have her property. At first the testatrix was inclined to defend her husband, but after she moved to her mother's she assumed a hostile attitude toward him. Testatrix then told witnesses that her husband had refused to wait upon her or to get any one to wait upon her. Her husband refused to let the child stay with her, giving as his reason that he wanted to save the child. On several occasions she was heard to say that she believed she would die and that her child would die of the same disease. Statements to the same effect were made by her sister, Annie Smith, in her presence. The attending physician testified that at the time he saw testatrix she was in the last stages of consumption, but that her mind was normal.

It is true that one of sound mind, and not under undue influence, has the right to dispose of his property as he pleases, even though the disposition be contrary to the dictates of natural or moral obligations. Hoerth v. Zable, 92 Ky. 202, 17 S. W. 360, 13 Ky. Law Rep. 470. It is also the rule that mere inequality in the disposition of one's estate is not sufficient evidence of mental incapacity or undue influence to take the case to the jury. Gay v. Gay, 183 Ky. 243, 209 S. W. 11. However, there are other principles of law that are peculiarly applicable to the facts of this case. Other evidence, in addition to gross inequality, will make a question for the jury. Meuth's Ex'x v. Meuth, 157 Ky. 784, 164 S. W. 63. Not only so, but if, under all the circumstances of the case, the will is unnatural in its provisions and inconsistent with the obligations of the testator to the different members of his family, the burden rests upon the propounders to give some reasonable explanation of its unnatural character. Walls v. Walls, 99 S. W. 969, 30 Ky. Law Rep. 948.

The case under consideration is not one of mere inequality, or even gross inequality. It is not even a case where a mother disinherited a child who was responsible for his actions, and might have been guilty of conduct calculated to forfeit her love. On the contrary, it is a case where a mother did the unreasonable and unnatural thing of disinheriting a child of such tender years that there was no possibility of his having done anything that could justify her conduct. Not only so, but when the will was made she was living in a household whose members, to say the least, were unfriendly toward the father of her child. There is the further evidence that, at the time, she was laboring under the impression that, because she had the tuberculosis, her son would necessarily have it, and would soon die, and that this belief, if not actually inspired by one of the dominant members of the household, was at least strengthened by statements which she frequently made in the presence of the testatrix. In addition to all this, the testatrix was bedfast and in the last stages of consumption. Looking at the case in the light of the unnatural character of the will, and all the circumstances under which it was executed, we are constrained to the view that there was sufficient evidence of undue influence to take the case to the jury. It follows that the contestee's motion for a peremptory instruction should have been overruled.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.