## Woodruff's Executor et al. v. Woodruff et al.

(Decided February 25, 1930.)

LUKINS & JONES, A. M. MARRET, R. L. JONES and BEN F. EWING for appellants.

HARRY L. HARGADON, W. T. McNALLY, GEO. H. HESTER and BURKE & LAWTON for appellees.

Opinion of the Court by Commissioner Hobson— Reversing.

Willard F. Woodruff died a resident of Jefferson county on September 7, 1927, at the age of 62 years, the owner of an estate of value about $200,000. He left surviving him his widow, Maggie Woodruff, and four children, three sons and a daughter. By his will he devised

his entire estate to the Louisville Trust Company on these trusts:

1. To pay to his wife, Maggie Woodruff, during her life two-thirds of the net income, and if she should die while his daughter Sarah Stonestreet was alive then to pay the whole of the net income to his daughter during her life.

2. To pay to Sarah Stonestreet one-third of the net income, and if his daughter should die during the life of his wife to pay to the two children of his daughter, until the death of his wife, the one-third of the net income that would have gone to his daughter if she had lived.

3. After the death of his wife and his daughter, all of the estate to go in fee simple to his granchildren, the children of his daughter. He devised to his sons, Wallace G. Woodruff, Theodore B. Woodruff, and Charles S. Woodruff, $1 each, giving as his reason for this that each had treated him in such disrespectful manner and had been so disregardful of his duties as a son that he did not wish him or any child that he might have to have any part of his estate. It was also recited in the will that the testator had given Wallace Woodruff about $10,000 or $12,000, which he had squandered, and that Charles S. Woodruff had squandered everything he could get his hands on and besides had cost him $15,000, for which he held a judgment against him.

The will was duly probated in the Jefferson county court. The three sons appealed to the circuit court, and on the trial in the circuit court before a jury there was a verdict and judgment against the will. The contestees appeal.

In stating the case to the jury the attorney for the contestants said this of the testator: "As a matter of fact he did not believe in a future existence. As a matter of fact he was known to curse his maker." The contestants objected to this. The objection was overruled. On the trial of the case the contestants were allowed to prove that the deceased did not believe in God but was an atheist; cursed God; did not believe in a hereafter, and thought that when he was dead it was the end of all. To all of which the contestants objected and their objections were overruled. This was erroneous. A man's religious belief may not be shown on the question of testamentary capacity. An atheist may make a will if he is competent to know his estate, the natural objects of his bounty, his obligations to them, and to dispose of it according to a

fixed purpose of his own. The evidence is sought to be justified on the ground that the will begins with these words, "In the name of God Amen," and that this evidence shows that it was not his will, to this extent. But the attorney who wrote the will testified that he always began wills with these words, and clearly this was not the real purpose of the testimony. The real purpose of the testimony was that many of the jury might think that a man with such violent ideas about God, and so expressing them, was not of sound mind. The court should have sustained the objection to counsel's statement and should have rejected all the evidence as to the deceased's beliefs on the subject of religion. Newman v. Dixon Bank & Trust Co., 205 Ky. 31, 265 S. W. 456; Nalty v. Franzman, 221 Ky. 709, 299 S. W. 585; 40 Cyc. 1011.

At the conclusion of the evidence the court gave the jury, in addition to the usual instructions on testamentary capacity and undue influence, an instruction on insane delusion, as outlined in Lancaster v. Lancaster, 87 S. W. 1137, 27 Ky. Law Rep. 1127, and Layer v. Layer, 110 Ky. 542, 62 S. W. 15, 22 Ky. Law Rep. 1936. By this instruction the court told the jury that if the deceased, at the time he executed the paper in contest, was under an insane delusion that his sons, or any of them, had grossly wronged him, and was of unsound mind on this subject and by reason of such unsoundness of mind made a different disposition of his estate than he would otherwise have made, the jury should find the paper not to be his last will; but to invalidate the paper on this ground the deceased must not only have been mistaken as to his sons having grossly wronged him, but must have been insane on the subject, and the execution of the paper must have been induced by such insanity.

This court, after carefully considering the evidence, has reached the conclusion that the instruction under the evidence should not have been given. If the evidence for the contestants was true, the jury were warranted in concluding that the deceased's conclusion as to the conduct of his sons was due to misrepresentations of them made by his daughter, or some other information he had received. The evidence does not warrant the conclusion that his views, as to the conduct of his sons, was the spontaneous production of his own mind, entirely causeless, or a belief in things which no rational mind would believe to exist, within the rule laid down in Burris v. Burris, 210 Ky. 731, 276 S. W. 820, and cases cited.

The court did not err in submitting the case to the jury on the question of testamentary capacity and undue influence. These instructions covered the whole case. Although the testator had mind sufficient to know his estate and the value thereof, in order to have testamentary capacity it is as essential that he should have capacity to know the natural objects of his bounty and his obligations to them as it is for him to know the character and value of his estate. McDonald v. McDonald, 120 Ky. 211, 85 S. W. 1084, 27 Ky. Law Rep. 607, 117 Am. St. Rep. 579; Meuth v. Meuth, 157 Ky. 784, 164 S. W. 63. The court deems it unnecessary to extend this opinion by setting out the facts; suffice it to say that there was evidence warranting the submission of this question to the jury. The rule is that if there is any evidence the question is for the jury, and there was evidence here showing that this man, from the time the children were born until his death, was entirely abnormal in the treatment of the children and did things that no proper minded father could do.

The court did not err in admitting the evidence as to insanity in his mother's family; for insanity is peculiarly hereditary, and in cases of this sort the evidence necessarily is allowed to take a wide range. Barber v. Baldwin, 138 Ky. 710, 128 S. W. 1092; McConnell v. McConnell, 138 Ky. 783, 129 S. W. 106, 40 Cyc. 1023.

There was also sufficient evidence of undue influence to warrant the submission of that question to the jury; for if his daughter said and did the things testified to by the witnesses, and thus procured a will leaving his entire estate in the end to her two children, it cannot be said that there was no evidence of undue influence. It has often been held that if, under all the circumstances of the case, the will is unnatural in its provisions and inconsistent with the obligations of the testator to the different members of his family, the burden rests upon the propounders to give some reasonable explanation of its unnatural character. Harrel v. Harrel, 1 Duv. 204; Lisle v. Couchman, 146 Ky. 345, 142 S. W. 1023; Walls v. Walls, 99 S. W. 969, 30 Ky. Law Rep. 948; Helm v. Neathery, 226 Ky. 42, 10 S. W. (2d) 474.

Judgment reversed, and cause remanded for a new trial.

Whole court sitting.