## Old 76 Distillery Company, Inc., v. Morris.

(Decided March 21, 1930.)

390

A. E. STRICKLETT and POGUE, HOFFHEIMER & POGUE for appellant.

WILLIAM A. BURKAMP and GALVIN & TRACY for appellee.

OPINION OF THE COURT BY JUDGE GRIGSBY—Affirming.

The plaintiff, Max Morris, who is the appellee here, instituted this action in the Campbell circuit court, alleging that in January, 1926, he and the defendant, the Old 76 Distillery Company, Inc., entered into a verbal contract, whereby the plaintiff was employed to sell and agreed to sell 2,500 cases of Old Jordan whisky to G. A. McCrann of the Railway Terminal Warehouse Company, Chicago, Ill.; that, in consideration of and for his services in making said sale, the defendant promised and agreed to pay plaintiff the sum of $2 per case. Plaintiff further alleged that in accordance with the sale, the said whisky was transferred from the bonded warehouse of the Old Jordan Distillery Company to General Bonded Warehouse No. 6, Chicago, Ill., from which warehouse, certificates covering said whisky were delivered to

McCrann. He further alleged that $1,250 had been paid to him on account, and sought to recover a balance of $3,750.

The answer denied that during the month of January, 1926, or at any other time, defendant entered into a contract with plaintiff as set forth in the petition, and averred that during the month of January, 1926, it was the owner of 2,500 cases of Old Jordan whisky; that it entered into a contract with the plaintiff whereby it agreed that, if the plaintiff would secure a purchaser for said whisky who would pay therefor an amount in excess of $14 per case, the defendant would pay to the plaintiff as a commission therefor any amount in excess of $14 per case when, and if said sums were paid to the defendant by the purchaser in compliance with the contract. The answer further set forth that defendant entered into a contract with McCrann, whereby McCrann agreed to purchase the whisky and to pay therefor the sum of $16 per case on or before September 22, 1926; that the whisky was transferred from the bonded warehouse of the Old Jordan Distillery Company to General Bonded Warehouse Company No. 6 at Chicago, Ill.; warehouse certificates were issued thereon and retained by defendant until McCrann paid for same. It further alleged that McCrann paid for 700 cases of the whisky and failed and refused to pay for the remaining 1,800 cases; that defendant had paid the plaintiff the sum of $1,250 and acknowledged a further indebtedness of $150, but denies liability as to any further sum.

Plaintiff by leave of court filed an amended petition, which is as follows:

"Comes plaintiff and by leave of court amends his petition, and states that pursuant to his employment as alleged in said petition he procured a purchaser for defendant for said whisky, and that defendant sold to said purchaser, being G. A. McCrann said 2.500 cases of whisky at $16.00 per case upon terms fixed by defendants."

A reply traversed the answer by denying that plaintiff was to receive as a commission for the sale of the whisky any amount in excess of $14 per case when or if said sum was paid to the distillery company by the purchaser, and also denied that McCrann failed or refused to take or pay for the remaining 1,800 cases of whisky.

The petition and amended petition by agreement of parties was traversed of record as to any allegations not specifically denied. On the trial before a jury, plaintiff recovered a judgment for $3,500, and defendant appeals.

Immediately upon the return of the verdict, the defendant filed motion for a judgment in its favor, notwithstanding the verdict of the jury. It is earnestly insisted that defendant's motion for a judgment non obstante veredicto should have been sustained under section 386 of the Civil Code of Practice, which provides: "Judgment shall be given for the party whom the pleadings entitle thereto, though there may have been a verdict against him." Plaintiff alleges that defendant promised and agreed to pay him the sum of $2 per case as commission. The answer admitted that defendant entered into a contract with plaintiff, whereby it agreed that, if the plaintiff would secure a purchaser for said whisky who would pay therefor an amount in excess of $14 per case, the defendant would pay the plaintiff as commission any amount in excess of $14 per case when the whisky was paid for. The answer further stated that defendant entered into a contract with McCrann, whereby McCrann agreed to purchase the whisky and to pay therefor the sum of $16 per case. The reply denied that plaintiff was to be paid his commission only when the whisky was paid for. This completed the issues.

Plaintiff testified that defendant stated to him in a conversation, "$14.00 a case would be what we would have to get for it and anything I got above $14.00 a case would be my commission." On January 7, 1926, the defendant wrote Mr. G. A. McCrann the following letter:

"January 7, 1926

"Mr. G. A. McCrann c/o The Railway Terminal & Warehouse Co., General Bonded Warehouse No. 6, Chicago, Ill.

"Dear Sir: This confirms order which you placed with us through Mr. Max Morris Saturday Jan. 2nd, for all of our Old Jordan bonded-in-bond pints of 1912, 1913 and 1914 inspections, price $16.00 per case in bond at distillery, Harrodsburg, Ky. Goods are to be put up each bottle sealed with an enameled metal cap and packed in an attractive individual sealed carton, as dummy furnished you.

Terms $3.50 per case cash, balance 90 day note at time of shipment in bond. It is further provided, that in the event you are not able to meet notes when due, you will cover same by a partial payment and a new note at reduced principal, interest on note 6%.

"The Old Jordan Whisky is now bottling and carload of 1250 cases will be ready for shipment within the next ten days to two weeks. We instructed the Old Jordan Distillery to advise written consent to the Railway Terminal & Warehouse Co., so that withdrawal papers will issue without any hitch.

"Assuring you of our appreciation of your patronage, and wishing you a prosperous Nineteen Twenty-Six, beg to remain

"Respectfully yours,
"The Old 76 Distillery Co., Inc.
"JMM:D
"CC:Mr. Max Morris."

It is shown by the testimony that plaintiff was to receive as commission all above $14 per case, and that the whisky was sold to Mr. McCrann for $16 per case, which made exactly $2 per case commission. This in our opinion was not a variance between the pleading and proof so as to entitle defendant to a judgment non obstante verdicto even if such motion would reach defect, which it would not, and the trial court correctly ruled in overruling the motion. The testimony of plaintiff is to the effect that in January, 1926, he learned that defendant, Old 76 Distillery Company, had or would have some Old Jordan whisky which it would want to put on the market. He received this information from Mr. John H. Menke, the president of Old 76 Distillery Company. Plaintiff testified that Mr. Menke told him that the distillery company was going to buy 360 barrels of whisky from Col. Thompson and wanted to know if he had any prospective customers for it. They had a number of discussions, and during one of these conversations Mr. Menke said, "$14.00 a case would be what they would have to get for it and anything above $14.00 a case would be my commission." He further testified that there was no time mentioned as to when he would receive his commissions, nor was anything said as to the terms on which the whisky would be sold. Plaintiff and Menke went to

Chicago, and plaintiff called Mr. G. A. McCrann and had him come down to the Congress Hotel, brought Mr. Menke and Mr. McCrann together and Mr. Menke and Mr. McCrann entered into a contract whereby Mr. Menke sold to Mr. McCrann 2,500 cases of Old Jordan whisky. Upon the terms of the contract, Mr. McCrann was to pay $3.50 per case cash and the balance covered by notes, notes bearing 6 per cent. interest. Later on Mr. McCrann came to Cincinnati, where the notes were executed and indorsed by plaintiff, Mr. Morris. These notes were later renewed without consulting Mr. Morris and he was not asked to indorse further.

On the other hand, Mr. John H. Menke testified that at the time of the transaction he was the president of the Old 76 Distillery Company, and that they had purchased 360 barrels of Old Jordan whisky. He admits the conversation with Morris, and says, "I told Morris that he could make a deal with these parties and whatever he obtained over $14.00 would be his commission;" that this proposition was on the assumption that it was to be a cash deal; that he did go to Chicago, where he met Mr. McCrann; that prior to said time he had not known Mr. McCrann; that the price was acceptable to Mr. McCrann, but he could only make a partial payment and would have to have the balance of the payments stretched out through the year, Mr. McCrann to take all the Old Jordan whisky. The deal was not closed in Chicago, but later on Mr. McCrann came to Cincinnati, where he made a new deal and agreed to take 2,500 cases only, and was to pay $5,000 when the first car was shipped and $5,000 when the second car was shipped; the balance was covered by a note. Menke testified that Morris was to receive $2 per case when the goods were paid for; instead of paying the $5,000 cash when each car went forward, McCrann executed his two notes for $5,000 each, which were susequently paid, leaving a balance of $30,000, of which amount $1,000 was paid, leaving a balance of $29,-000 unpaid; that he subsequently secured possession of 1,800 cases of this whisky McCrann did not pay for, and which defendant sold to other parties. He further testified that he had paid plaintiff $1,250 commission, and filed canceled check for that amount which purported to be payment of commission to date. He conceded a balance of $150, for which he offered to confess judgment.

Plaintiff's theory is that no time was fixed for the payment of his commission, and that it was fully earned

when he secured a purchaser, which he did by securing Mr. McCrann. Defendant's theory is that plaintiff's commission was not earned until the whisky was paid for in cash. Both of these theories in our opinion were fairly submitted to the jury under the following instructions (instruction No. 1 submitting the plaintiff's theory, and instruction No. B submitting the defendant's theory):

"1. The court instructs the jury that if they believe from the evidence that under the terms of the contract between plaintiff and defendant no time was fixed for the payment to plaintiff of the commission agreed upon for the sale of the whisky shown in the proof, and further believe that the terms of the sale of said whisky to McCrann were fixed by the defendant, then the law is for the plaintiff, and the jury shall so find; otherwise they shall find for the defendant.

"2. If the jury should find for plaintiff under instruction No. 1, they shall find for him in the sum of $5,000.00, and shall allow defendant a credit thereon for its payment to plaintiff of $1,250.00 on April 9, 1926, and shall allow defendant a further credit of $150.00 for which last amount defendant has confessed judgment, or $3,500.00 with interest thereon from May 1, 1926.

"3. Nine or more jurors less than twelve agreeing and signing may return a verdict. If all agree the foreman alone need sign.

"B. The court instructs the jury, that if you believe from the evidence, that the contract between plaintiff and defendant was to the effect that defendant would pay to the plaintiff all in excess of $14.00 per case, as commission on the whiskey sold by the plaintiff, when and as the same was paid for in cash by the person to whom the plaintiff sold such whiskey, then you will find a verdict for the defendant."

We are of the opinion that there was ample evidence to take the case to the jury. It was necessary for the jury to determine the truth from the conflicting evidence, and their finding will not be disturbed unless palpably against the evidence, which in our opinion is not the case here. Security Finance Co. v. A. L. Cook & Son, 223 Ky. 124, 3 S. W. (2d) 187.

It is lastly insisted that the verdict of the jury was not signed by the jurors agreeing thereto. It appears

from the record that the verdict was written on one piece of paper, and that the nine jurors signed their names on a separate piece of paper; both papers were returned to the court and handed to the clerk at the same time. The defendant made no objections to this informality at the time. If appellant had desired to raise the question of the sufficiency of the signing of the verdict, he should have done so at the time it was returned in order that the court might, as would have been his duty, have directed the jury to have corrected the form of its verdict so as to conform to the law. Walter v. Louisville Railway Co., 150 Ky. 652. 150 S. W. 824, 43 L. R. A. (N. S.) 126, Ann. Cas. 1914D, 441.

Perceiving no error to the substantial prejudice of defendant, the judgment is affirmed.