# Kiefer's Ex'r and Ex'x v. Deibel et al.
## Kiefer v. Same.
## Hartman v. Same.

Dec. 4, 1942.

O. G. Everbach and Isaac Sherman for appellants.

Milliken & Handmaker for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

This appeal is prosecuted from the judgment of the Jefferson Circuit Court, Common Pleas Branch, Third Division, adjudging: (a) that a paper executed by Mrs. Minnie Kiefer was not her will and certifying that fact to the Jefferson Circuit Court; (b) that two deeds executed by Mrs. Kiefer conveying certain real estate to her son, Henry Kiefer, and to her daughter, Mrs. Eliz-

abeth Hartman, were not the act and deed of the grantor.

Appellants, Henry Kiefer, and his sister, Mrs. Elizabeth Hartman, executor and executrix of their mother, seek a reversal of the judgment because: 1. The circuit court placed on them as contestees the burden of proving there was no undue influence exerted on testatrix; 2. a peremptory instruction was given against the will; 3. the deeds executed by Mrs. Kiefer were held not to be her act and deed, which deeds were not in issue on the appeal from the judgment of the county court probating the will.

It may be of some assistance to give a brief background of this case. Mrs. Kiefer, a widow of some 20 years, was 85 years of age when she made her will on February 20, 1936. She lived until May 13, 1940, residing in her own home with a housekeeper-nurse where her two daughters visited her almost daily. Four children were born to Mrs. Kiefer; Henry, Elizabeth, Louise and Josephine, the latter dying in 1920 without leaving issue. Mrs. Kiefer's estate had consisted of about $75,-000, most of which was in the form of securities kept in her lock-box in The Louisville Trust Company, there being only some $10,000 in real estate represented by a half dozen houses and lots. In 1925, 1932 and 1935, she made gifts aggregating $42,000 in equal proportions to her three living children, Henry, Elizabeth and Louise. Mrs. Kiefer being quite old, in bad health and very fleshy, her two daughters had access to her lock-box and largely attended to their mother's business where moving about was required.

Louise Deibel separated from her husband in 1930 and died on February 7, 1936, leaving three children, who are the contestants in this litigation. Upon Mrs. Deibel's death, the state taxing authorities sealed Mrs. Kiefer's lock-box until they could make an inventory of its contents. This angered her and it appears in the testimony that Mrs. Kiefer had her son and surviving daughter remove the contents of the lock-box and bring them to her home. She then divided about $20,000 in securities between her son and daughter.

By her will made thirteen days after the death of her daughter, Mrs. Deibel, bequests ranging from $50 to $200 were made to each of her nine grandchildren, and

after devising her household goods to Mrs. Hartman, and $385 to the Cave Hill Investment Company for the perpetual care of the family cemetery lot, the residue of her estate was devised equally to her son and daughter. The will recited no greater part of the estate was given to Mrs. Deibel's children because she had received her part thereof while living apart from her husband.

Simultaneously with making her will, Mrs. Kiefer executed separate deeds to her son and daughter conveying to Henry and Mrs. Hartman her real estate in seemingly equal portions, reserving to herself a life estate in the property conveyed. Due to the gift of the $20,000 in securities to her son and daughter shortly before the will was made and to the two deeds, the residue of the estate amounted to only about $2,100.

This action was instituted in the circuit court by filing an appeal from the judgment of the county court probating the will, as is provided in Sections 23.030, 394.240 and 394.250, KRS, Sections 978, 4850 and 4851, KS, and by following the procedure outlined in Section 724, Civil Code of Practice. The statement of the appeal merely denied the paper probated in the county court was the true last will and testament of Mrs. Kiefer. The personal representatives of the testatrix proved the due execution of the will. Thereupon the contestants assumed the burden and confined their proof to lack of testamentary capacity and undue influence.

A grandson, Kenneth Deibel, testified as to Mrs. Kiefer's poor physical condition and as to her lack of testamentary capacity at the time the will was made; that she was bed-ridden, was in a stupor, did not recognize him for some time and did not realize his mother was dead and inquired several times why she did not come to see her. Mrs. Kiefer denied to him that she had executed deeds or that she had given away her property. He further testified his grandmother was easily influenced; and that when he told his aunt, Mrs. Hartman, there would be a day of reckoning, Mrs. Hartman replied to him that had she died and if his mother and Uncle Henry had lived, they would have done the same thing that she (Mrs. Hartman) did. The two deeds were introduced in evidence by this witness.

Irvin Deibel, another grandson, described Mrs. Kiefer's mental and physical condition to be about as his

brother testified it was. He likewise did not think she possessed testamentary capacity.

Dr. Hiram S. Eggers, a physician who had examined testatrix shortly before the death of Mrs. Deibel, testified she was suffering from a complication of diseases and her condition included hardening of the arteries, heart trouble and kidney trouble; that she answered questions poorly and was forgetful. In answer to the question embodying the elements of testamentary capacity, the doctor gave as his opinion that she did not have sufficient mind and memory to make a will.

At this stage of the trial the court ruled the burden shifted to the propounders; also, that the two deeds mentioned in the evidence were testamentary in character. The propounders saved the proper exceptions to this ruling of the court and proceeded with their testimony.

Without going into details it will suffice to say that the propounders introduced many witnesses who testified that Mrs. Kiefer was a woman possessing a strong will, insisted upon having her own way, and was not susceptible to undue influence. When asked the usual question containing the approved test of testamentary capacity, they gave it as their judgment, based upon their observations of her, that she possessed mental capacity to make a will.

At the conclusion of the propounders' evidence, the court peremptorily instructed the jury to find against the will, and to find that the two deeds executed by Mrs. Kiefer at the time she made the will were not her act and deed.

From the oral opinion of the judge delivered at the time he gave the peremptory instruction, as well as from his written opinion overruling contestees' motion for a new trial, he considered the three papers (the two deeds and the will) as constituting the last will and testament of Mrs. Kiefer. He brushed aside the question of mental incapacity and while he said there was no definite testimony of actual undue influence exerted at any particular time, the judge based his directed verdict on the fact that Mrs. Hartman furnished as coming from her mother the data to the lawyer who drew the will and the two deeds without testifying as to what transpired between her and her mother when she obtained such data.

We agree with appellants that the trial judge erred in holding that the burden shifted to the contestees to establish there was no undue influence after contestants proved that testatrix was old, infirm, diseased and that a confidential relation existed between her and them as the chief beneficiaries under her will. It appears to be the general rule that after the propounder establishes the due execution and probate of the will, that the contestant must assume the burden of establishing his grounds of contest. 28 R. C. L. 398, Section 407; 68 C. J. 979, Section 747. Such has been the rule in this jurisdiction for many years. Johnson v. Stivers, 95 Ky. 128, 23 S. W. 957, 15 Ky. Law Rep. 477; Barlow v. Waters, 28 S. W. 785, 16 Ky. Law Rep. 426; Childers' Ex'x v. Cartwright, 136 Ky. 498, 124 S. W. 802; Hall v. Hall, 153 Ky. 379, 155 S. W. 755; Hildreth v. Hildreth, 153 Ky. 597, 156 S. W. 144; Crump v. Chenault, 154 Ky. 187, 156 S. W. 1053; Egan v. Egan's Ex'x, 189 Ky. 332, 224 S. W. 1050; Leary v. Leary, 203 Ky. 344, 262 S. W. 293; Martin v. Combs, 284 Ky. 530, 145 S. W. (2d) 108; Higg's Ex'x v. Higg's Ex'x, 286 Ky. 236, 150 S. W. (2d) 681. The Hildreth case on page 146 of 156 S. W., quoted from the Cartwright case:

"The rule is well settled that, after due execution is proved by the propounders, the burden of showing that the instrument is invalid, because procured by the exercise of undue influence, is upon the contestants. This must be shown by evidence at least tending to establish that undue influence was exercised upon the testator. It is not sufficient that it be shown that there was an opportunity to exercise undue influence, or that there was a possibility that it was exercised; some evidence must be adduced showing that such influence was exercised. The law permits the owner of property, who is of sound mind and disposing memory, to transmit his property by last will and testament in such manner as pleases him, and juries are not permitted to make for him a will that accords with their ideas of justice and propriety; nor are they permitted to suspect away the right of the testator to dispose of his property in accordance with his own will and desire."

Appellees rely upon Cuthbertson's Appeal, 97 Pa. 163; In re Anderson's Estate, 29 Cal. App. (2d) 637, 85 P. (2d) 212; and In re Smalley's Estate, 124 N. J. Eq.

461, 2 A. (2d) 321; 126 N. J. Eq. 217, 8 A. (2d) 296, as supporting their contention that where a confidential relation existed and the beneficiary received an unusually large part of the estate and actively participated in procuring the execution of the will, the burden is on him to show that no undue influence was exercised. From these cases and the authorities cited therein, it would appear that this is the rule in those jurisdictions. But in this jurisdiction undue influence cannot be presumed and every presumption is indulged in favor of the will because all persons are presumed to be normal. Ramsey v. Howard, 289 Ky. 389, 158 S. W. (2d) 981; Cecil's Ex'rs v. Anhier, 176 Ky. 198, 195 S. W. 837, 844; Bailey v. Waddy, 184 Ky. 451, 212 S. W. 459, 460. In quoting from Talbott v. Giltner, 179 Ky. 571, 200 S. W. 913, it was written in the Bailey case on page 460 of 184 Ky., on page 460 of 212 S. W.:

> "Undue influence cannot be presumed. Proof tending to establish its existence must be adduced. Nor will the fact that the devisee or another had access to the testator, or there was opportunity to influence him, be sufficient to sustain the plea unsupported by evidence of facts which tend to establish the want of free agency on the part of testatrix."

It is further argued by appellee that the rule enunciated in Harrel v. Harrel, 62 Ky. 203, 1 Duv. 203; Walls v. Walls, 99 S. W. 969, 30 Ky. Law Rep. 948; Helm's Guardian v. Neathery, 226 Ky. 42, 10 S. W. (2d) 474, and other similar cases, places the burden upon the propounder to show there was no undue influence where there is gross inequality in the disposition of the estate. As we have interpreted these authorities they do not place the burden on the propounder of proving there was no undue influence, but go only to the extent of holding that where the will was unnatural and there has been gross inequality in the disposition of the estate among the natural objects of testator's bounty, slight evidence of want of testamentary capacity or of undue influence is sufficient to take the case to the jury. Wigginton's Ex'r v. Wigginton, 194 Ky. 385, 239 S. W. 455; Jackson's ex'r v. Semones, 266 Ky. 352, 98 S. W. (2d) 505; Higgs' Ex'x v. Higgs' Ex'x, 286 Ky. 236, 150 S. W. (2d) 681. In the instant case the will made no great difference between the several grandchildren and it recited the reason for any difference was that Mrs. Deibel had received her

share of the estate while living apart from her husband.

From what has been written above it is apparent that the trial judge erred in ruling that the burden of proving there was no undue influence shifted back to the contestees after they had proved the due execution of the will and after contestants had introduced some testimony relative to an unequal disposition of the estate, to testatrix' lack of mental capacity, to her being susceptible to undue influence, and that contestees had an opportunity to exert such influence. It necessarily follows that the court also erred in directing the jury to find against the will as contestees had made out a prima facie case and the burden of going forward with the proof shifted to contestants.

The trial judge had no authority to pass on the two deeds when the sole question before him on the appeal from the county court was whether or not the paper probated was the will of Mrs. Kiefer. Section 394.240, KRS, Section 4850, K. S., provides an appeal may be taken from the county court to the circuit court, and the only issue on such an appeal is whether the particular instrument probated or rejected by the county court is the will of testatrix. 68 C. J. 875, Section 599; Kasey v. Fidelity Trust Co., 131 Ky. 604, 115 S. W. 737; Leak's Heirs v. Leak's Ex'r, 73 S. W. 789, 24 Ky. Law Rep, 2217; Central Trust Co. of Owensboro v. Bennett, 208 Ky. 281, 270 S. W. 821; Henry v. Spurlin, 277 Ky. 114, 125 S. W. (2d) 992; Riggs v. Rankins' Ex'r, 268 Ky. 390, 105 S. W. (2d) 167.

In his opinion overruling the motion for a new trial, the judge recited the deeds were of a testamentary character and that they and the will constituted the last will and testament of Mrs. Kiefer. But the deeds were not testamentary in character merely because they were executed simultaneously with the will. They passed a present and immediate estate in the property conveyed, while the will could have been modified or revoked in its entirety at any time during the four years she lived after having executed it. The law is so clear on whether or not an instrument is a will or a deed that it is unnecessary to enter into a discussion thereof. If a present fixed interest vests in the grantee on delivery, although right of possession and enjoyment may be postponed until some future time, the writing takes effect as a deed. If the vesting of the interest is postponed until the death of the

maker, it is a will. The decisive factor is the intention of the parties derived from the whole instrument. 18 C. J. 149, Deeds, Section 6; Parker v. Archibald, 212 Ky. 567, 279 S. W. 979; Vaughn v. Metcalf, 274 Ky. 379, 118 S. W. (2d) 727. Also, see 68 C. J. 613, Section 235, and annotations in 11 A. L. R. 23 and 76 A. L. R. 637.

Whether or not these deeds are valid cannot be determined on the appeal from the judgment of the county court probating the will.

To summarize, the judgment is reversed for proceedings consistent with this opinion because the court erred: (a) in placing the burden upon the contestees of proving there was no undue influence; (b) in directing a verdict against the will; (c) in passing on the validity of the deeds. All other questions are expressly reserved.

Judgment reversed.