## Allen et al. v. Henderson et al.

Jan. 9, 1945.

John W. Walker for appellants.

Shumate & Shumate for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

William Rowland died November 21, 1941, at the age of 82, leaving as his only heirs at law Bertha Allen, a daughter, and John W. Webb, the son of a deceased daughter. On June 26, 1941, he executed his will in which he gave his daughter and grandson $1 each and left the remainder of his estate to his four stepchildren, Callie Stamper Henderson, Marion Stamper, Henry Stamper, and Minnie Stamper Larrison. Bertha Allen and John W. Webb appealed from the order of the Estill county court probating the will, and at a trial in the Estill circuit court the jury found the paper in contest to be the last will of William Rowland. The contestants have appealed. They assert the evidence shows conclusively that the testator did not have testamentary capacity, and that the trial court erred in overruling their motion for a peremptory instruction.

William Rowland's first wife died in 1900, leaving four children, including appellant Bertha Allen, who was then 7 years of age. William Rowland was unable financially to maintain a home and support his children, and they were placed in the homes of various persons in Estill county and never lived with their father thereafter. In 1914 Rowland married Sophia Stamper, a widow, who had four children. The youngest of these, Callie Stamper, went with her mother to her stepfather's home but soon thereafter married Bennie Henderson and moved to Scott county, where she lived several years. In 1919 she and her husband returned to Estill county and moved into testator's home. Her husband died in 1920 and her mother died in 1928. After her mother's death she continued to live in the testator's home, kept house for him, and nursed him during his last illness, which extended over a long period of time. He was confined to his bed nearly a year before his death. Two of William Rowland's children died without leaving issue; one of them, Clay Rowland, lost his life

in France during the first World War. He left a war risk insurance policy in which his father was named beneficiary, and it was out of the proceeds of this policy that testator accumulated the small estate, approximately $2,000, which he owned at the time of his death.

Practically all of the evidence introduced by the contestants was directed to the issue of mental capacity. Their chief witness, Dr. John A. Snowden of Winchester, Kentucky, testified that in his opinion the testator did not have testamentary capacity. He based his opinion on the testator's physical condition and his observation of him over a period of several months beginning in January, 1941. Dr. E. E. Edwards, who was not acquainted with the testator, in answer to a hypothetical question, expressed a similar opinion. Four lay witnesses testified that the testator did not have testamentary capacity, but their opinions were based on trivial incidents. For the contestees Dr. B. S. Broadus, a physician of Irvine, Kentucky, testified that he had known the testator for many years and had visited him professionally during the summer of 1941. He found him suffering from Bright's disease and arteriosclerosis. Dr. Snowden had stated that the testator had suffered a stroke of apoplexy, but Dr. Broaddus found no evidence of apoplexy and testified that in his opinion the testator possessed testamentary capacity in June, 1941. The professional visits of Dr. Broadus during 1941 were less frequent than those of Dr. Snowden, and, as asserted by counsel for appellants, his examinations were probably less thorough, but his testimony had probative value and was competent. H. B. McIntosh, a neighbor and close friend of the testator, was one of the attesting witnesses. He testified that he had known the testator for more than forty years and had signed as a witness a will executed by Mr. Rowland about fifteen years before his death. In that will the testator left all of his property to his four stepchildren. H. B. McIntosh was present when a second will was executed about eighteen months before the execution of the last will. In the second will Mr. Rowland left one-half of his property to his daughter and grandson and one-half to the four Stamper children. He stated that his reason for making the change was to prevent litigation. He became dissatisfied with this will and requested McIntosh to go to Irvine, Kentucky, and have an attorney prepare a will similar to his first will. McIntosh complied with this re-

quest, and the third will was executed June 26, 1941. The witness testified that William Rowland had testamentary capacity on that date. L. B. McIntosh, the other attesting witness, James Rowland, brother of the testator, Lester Charles, a tenant on his farm, and Henry Puckett, a neighbor who had had business transactions with the testator and conversed with him frequently, all testified that testator had testamentary capacity at the time the last will was executed. The evidence on the issue of mental capacity was amply sufficient to take the case to the jury and sustain its verdict.

There is no direct evidence of the exercise of undue influence in procuring the execution of the will. It is true that undue influence may be proved by circumstances, and it has been said that where a will is unnatural in its provisions and inconsistent with the obligations of the testator to the different members of his family the burden rests upon the propounders to give some reasonable explanation of its unnatural character. Woodruff's Ex'r v. Woodruff, 233 Ky. 744, 26 S. W. 2d 751; Helm's Guardian v. Neathery, 226 Ky. 42, 10 S. W. 2d 474; Walls v. Walls, 99 S. W. 969, 30 Ky. Law Rep. 948. These cases do not hold that the absence of a reasonable explanation of the seeming unnatural provisions of a will entitle the contestants to a peremptory instruction as argued by appellants. They merely hold, as pointed out in Higgs' Ex'x v. Higgs' Ex'x, 286 Ky. 236, 150 S. W. 2d 681, 683, that "where there is gross inequality in the disposition of the estate among the natural objects of testator's bounty, or where the will is unnatural, such facts, when unexplained and when corroborated by even slight evidence of want of testamentary capacity, or of undue influence, are sufficient to take the case to the jury." Cf. Kieffer's Ex'r & Ex'x v. Deibel, 292 Ky. 318, 166 S. W. 2d 430.

In the present case the will, under all the circumstances, is not unnatural in its provisions. According to the evidence introduced by the appellees, Bertha Allen visited her father only three times in nearly thirty years, once in 1914 and twice just before his death, although during all of that time she lived in an adjoining county only a few miles from her father's home. Bertha Allen admitted that she visited in her father's home only once between 1914 and 1928, but claimed she visited him twelve or fifteen times thereafter, though her testimony

on this point is vague. Her visits, whatever the number, appear to have been made during his last illness. The mother of appellant John W. Webb died when he was six or seven years old, and the family with which he lived after his mother's death took him to Illinois in 1911. There is no evidence that he ever wrote to his grandfather during the succeeding thirty years, and it is admitted that he never visited the testator during that time though he lived in an adjoining state. On the other hand, it is shown that the relationship of the testator and the appellees was of the friendliest nature. He was particularly devoted to Callie Henderson, who lived as a member of his household for more than twenty years, kept house for him during most of that time, and nursed him during his long illness. It is conceded that she was devoted to him and treated him with filial affection. It is extremely doubtful that the evidence was sufficient to authorize an instruction on undue influence, but such an instruction prepared and offered by appellants was given and they cannot complain.

The judgment is affirmed.