## Pardue et al. v. Pardue et al.

January 10, 1950.

L. B. Handley, Judge.

Terry L. Hachett and Marion Vance for appellants.

Brents Dickinson, Jr. and V. H. Jones for appellees.

JUDGE HELM—Affirming.

J. P. Pardue died December 10, 1943, at the age of 79. He left surviving him his wife, Ianthia B. Pardue, seven children, and one grandchild. On August 9, 1943, he executed what purported to be his last will and testament providing for the payment of his just debts; that his wife should have "just what she would be entitled to under the laws of descent and distribution;" that "while I am not unmindful of my other seven children, * * * I do hereby will, devise, and bequeath to my son, Willie Pardue, all the rest and residue of my estate." His son Willie was named as executor, with "power to sell any property necessary to be sold to carry out the provisions of this will, with full right to execute deeds or any other papers or instruments necessary to carry out this will."

This instrument was admitted to probate May 27, 1946. This action was filed March 15, 1948, by Mrs. Pardue, six children and a grandchild, against Willie Pardue, praying that the purported will be set aside and declared not to be the last will and testament of J. P. Pardue on the grounds of mental incapacity and undue influence. A jury found the purported will not to be the last will and testament of J. P. Pardue. Willie Pardue appeals, assigning as errors:

1.    Admission of incompetent evidence for contestants.

2.    Exclusion of competent evidence for contestees.

3.    Refusal to grant motion for directed verdict at conclusion of evidence for contestants.

4.    Refusal to grant motion for directed verdict at conclusion of all the evidence.

5.    Error in the instructions given.

6.    The verdict is flagrantly against the evidence and the weight of the evidence.

7.    The verdict results from passion and prejudice.

8.    The verdict is not signed according to law and instructions.

9.    Two members of the jury, who agreed to the verdict, were related by marriage to one or more of the contestants without knowledge of the contestees prior to the verdict and discharge of the jury.

Appellants' counsel say: ''Although we propose to discuss each of the errors stated above, we could well content ourselves with a discussion of the third and fourth and rest our case there.''

J. P. Pardue's property, at the time of his death, consisted of a 64-acre farm near Red Cross in Barren County, a horse, a cow, and a few farming tools. He had been sick some two or three years before he died. Dr. Leslie Ritchie, of Park City, a general practitioner of 36 years experience, was his doctor. Dr. Ritchie had been treating him since 1941. Pardue had ''high blood pressure and rheumatism, but his main trouble was kidney trouble, nephritis. * * * inflammation of the kidneys. * * * uremic poisoning.'' The poison was not properly eliminated. Something affected his mind. Dr. Ritchie attributed this to the kidney condition. Pardue had this condition when he first came to him. Dr. Ritchie saw him at intervals of from two to six or eight weeks. He gradually grew worse. Every time ''I examined him, he wasn't as well as on the previous occasion.'' This was true of him both physically and mentally. He did not see him in August, 1943. The last time he saw him was in September or October, 1943. Dr. Ritchie

talked with him about thirty minutes. Asked if Pardue at that time had sufficient mind to know the nature and extent of his property, the natural objects of his bounty, and if knowing them he had sufficient mind and ability to dispose of his property according to a fixed and definite purpose of his own, Dr. Ritchie answered: "The last time I saw him he practically had no mind." In Dr. Ritchie's opinion he did not have testamentary capacity.

By other witnesses it was shown that Pardue's condition got worse all the time from March, 1943, until he died. Noah Bailey, who had known Pardue ten or twelve years, found him in June, 1943, about 200 yards from his home "all mixed up some way, * * *. Seemed like he was lost and didn't know what he was doing. * * * talking about he couldn't get back home." Bailey "fooled with him an hour." In his opinion Pardue did not have testamentary capacity at that time.

Other witnesses testified that he was a sick man, wasn't at himself, seemed to be lost, was in a daze, would wander around like he was lost, didn't notice anybody, did not pay any attention to one at all, and would wander off. A neighbor, Mrs. Baldock, visited him in July or August. He looked up and mumbled something, commenced crying and went off mumbling things she couldn't understand. He didn't seem to recognize his daughter, who was with her. At that time he didn't seem to be at himself, and, in her opinion, he did not have testamentary capacity. Again, about the first of August, she saw and observed him and in her opinion he did not have testamentary capacity at that time. She didn't "think he had his right mind at all." The testimony of other witnesses was to the same effect.

Appellants introduced evidence tending to show that Pardue did have sufficient mind to make a will. The writer of the will did not "observe anything abnormal about him." A number of other witnesses, who lived in the neighborhood and had known Pardue for some years, stated that they had not observed anything abnormal in his mental condition. Their testimony tended to show that he had testamentary capacity.

Appellant contends that all evidence touching on testamentary capacity should have been confined to the date the purported will was signed, August 9, 1943.

In 57 American Jurisprudence, page 105, Wills, section 104, it is said: "* * * evidence of the testator's mental status both before and after the execution of the will are admissible so long as they have a reasonable tendency to indicate his mental condition at the time of the execution of the will. In fact, in determining whether the mind of the testator was sound at the time his will was executed, it is important to know the condition of his mind a reasonable length of time before and after the execution, especially where the form of mental derangement involved is one such as senile dementia, which advances slowly." Cf. Page on Wills, Vol. 2, sec. 792.

For appellees it is shown that Pardue's condition, both mental and physical, gradually grew worse. Some of the appellees and members of their family observed J. P. Pardue's condition and testified as to what they observed. This evidence was not incompetent because of Section 606(2), Civil Code of Practice.

Appellant did not testify or explain the unnatural character of this will in completely excluding seven of Pardue's living children, and a grandchild, the son of deceased's daughter. In Woodruff's Ex'r et al. v. Woodruff et al., 233 Ky. 744, 26 S. W. 2d 751, 753, we said: "It has often been held that if, under all the circumstances of the case, the will is unnatural in its provisions and inconsistent with the obligations of the testator to the different members of his family, the burden rests upon the propounders to give some reasonable explanation of its unnatural character. Harrel v. Harrel, 1 Duv. (203), 204; Lisle v. Couchman, 146 Ky. 345, 142 S. W. 1023; Walls v. Walls, 99 S. W. 969, 30 Ky. Law Rep. 948; Helm's Guardian v. Neathery, 226 Ky. 42, 10 S. W. 2d 474." In Allen et al. v. Henderson et al., 299 Ky. 92, 184 S. W. 2d 885, 886, we said: "* * * 'where there is gross inequality in the disposition of the estate among the natural objects of testator's bounty, or where the will is unnatural, such facts, when unexplained and when corroborated by even slight evidence of want of testamentary capacity, or of undue influence, are sufficient to take the case to the jury.' Cf. Kiefer's Ex'r and Ex'x v. Diebel, 292 Ky. 318, 166 S. W. 2d 430."

There was sufficient evidence of probative value to submit the case to the jury. The jury saw and heard

the witnesses, and were the judges of the weight of the testimony. We cannot agree that the verdict was flagrantly against the evidence, or the result of passion and prejudice. The court did not instruct on undue influence, but mental capacity only. The usual instructions were given. Appellant does not point out any error in the instructions as given.

It appears that the verdict of the jury was written upon the paper containing the instructions to the jury, and that ten jurors signed, and beneath their signature appear the words: "We, the above jurors, find for the plaintiff and find the paper not to be the will of J. P. Pardue." In the judgment, the verdict as signed and written is set out in full. The trial court, when this verdict was returned, should have requested the jury to correct this informality. This is not a reversible error because of the provisions of KRS 446.060. See, Old 76 Distillery Company, Inc., v. Morris, 234 Ky. 389, 28 S. W. 2d 474; Terrell v. Commonwealth, 194 Ky. 608, 240 S W. 81.

Appellant, in his motion and grounds for a new trial, says that two of the jury were related to the parties. No proof, however, of this was offered.

We find no error in the record substantially prejudicial to appellant. The judgment of the trial court is affirmed.

Judge Latimer not sitting.