## WHITCOMB v. WHITCOMB et al.

Court of Appeals of Kentucky.

Jan. 29, 1954.

Rehearing Denied May 14, 1954.

D. B. Smith, Ray O. Shehan, James Sampson and Edward G. Hill, Harlan, for appellant.

J. B. Carter, Harlan, W. R. Lay, Grant F. Knuckles, Pineville, Joseph J. Leary, Frankfort, for appellees.

CULLEN, Commissioner.

The Harlan County Court admitted to probate a purported holographic will of John G. Whitcomb, which devised his entire estate to his widow, Pauline B. Whitcomb. The heirs, consisting of brothers, sisters, nieces and nephews, appealed to the circuit court, and upon a jury trial a verdict was returned finding that Whitcomb did not write the will. The widow has appealed from the judgment entered upon the verdict.

The main contention of the appellant is that a directed verdict in favor of the will should have been granted.

Opinions that the will was in Whitcomb's handwriting were expressed by the widow, her sister, and attorney who had represented and been a close friend of Whitcomb for many years, the cashiers of two banks with which Whitcomb did business, and a well qualified handwriting expert. Contrary opinions were stated by a sister and a brother of the deceased, and by a penmanship expert who had had some experience in comparing handwriting and examining questioned documents.

Whitcomb was around 58 years of age at the time of his death on June 8, 1952. He had married Pauline Whitcomb in November 1949, after having kept company with her for some 14 years. Prior to the marriage he had lived for many years with his sister in the family home. He was in the soft drink bottling business in Harlan with two of his brothers. At the time of his marriage he was in poor health, and immediately after the marriage he and Pauline moved to Texas, for his health. He was hospitalized from late in April 1952 until June 7, when he returned home, to die the following day.

The alleged will is dated April 16, 1952. The widow testified that Mr. Whitcomb wrote the will in her presence, sitting on the side of the bed, and using a magazine on which to rest the paper. At his request she took the will and kept it with other important papers until after his death.

The testimony of the widow that she saw her husband write the will, and as to what he said and did at the time, was admitted over the objections of the opponents of the will. It is clear that this testimony was incompetent under Section 606(2) of the Civil Code (now KRS 421.210), as being testimony given by the widow for herself concerning statements of, transactions with, and acts done by a deceased person. Johnson v. Johnson, Ky., 257 S.W. 2d 533; Hale v. Hale, 242 Ky. 810, 47 S.W. 2d 706; Russell v. Tyler, 224 Ky. 511, 6 S.W.2d 707; Combs v. Roark, 206 Ky. 454, 267 S.W. 210.

It is true that in some of the earlier decisions of this Court, such as Caddell's Heirs

v. Caddell's Ex'r, 175 Ky. 505, 194 S.W. 541, it was said that Section 606(2) of the Civil Code did not apply to will contests, but in the Hale case, cited above, it was held that the exception as to will contests would be limited to contests on the ground of mental incapacity or undue influence.

Other cases relied upon by the appellant as supporting the competency of the widow's testimony, such as Nelson v. Nelson, 235 Ky. 189, 30 S.W.2d 893; Hughes v. Bates, 278 Ky. 592, 129 S.W.2d 138, and Jones v. Driver, 282 Ky. 82, 137 S.W.2d 729, are not applicable. The Nelson case holds only that a widow may identify the handwriting of her deceased husband. The Hughes and Jones cases have to do with communications between husband and wife, rather than transactions with a person since deceased.

■ If the testimony of the widow that she saw her husband sign the will is eliminated, as it must be, there remains the testimony of six witnesses, including an expert, that the will is in Whitcomb's handwriting, opposed by the testimony of three witnesses, including an expert, that it is not in his handwriting. This created an issue of fact for the jury, and we cannot say that the verdict is flagrantly against the evidence, notwithstanding that the preponderance of the evidence favors the will.

The fact that distinguishes this case from Polley v. Cline's Ex'r, 263 Ky. 659, 93 S.W. 2d 363, Roberts v. McCown, 288 Ky. 543, 156 S.W.2d 840, and Herd v. Herd, 293 Ky. 258, 168 S.W.2d 762, relied upon by the appellant, is that in each of those cases there was positive testimony by one or more eyewitnesses that they saw the deceased write or sign the will. It is true that in the Herd case the positive testimony was that of the widow, but it appears that her testimony was not objected to and therefore was treated as competent evidence.

The appellant makes some claims of error with respect to the admission and rejection of evidence, the conduct of the jury, and the form of the verdict. The claims concerning the evidence are that it was error (1) to admit evidence as to the value of the decedent's estate; (2) to refuse to allow appellant to testify that the appellees did not make any claim of forgery when she first showed them the will after her husband's death, and did not raise such a claim until the will was offered for probate several weeks later; (3) to refuse to admit evidence that the appellees had employed a certain handwriting expert to examine the will and had not used him as a witness on the trial; and (4) to refuse to permit appellant's handwriting expert to testify that an incomplete letter in the signature on the will was evidence of genuineness.

■ (1) It appears that the court decided to admit evidence as to the value of the estate because of a remark made by appellant's counsel in his opening statement to the jury, to the effect that if the will was not admitted to probate the widow would go "penniless". Even if the evidence was not competent, we cannot say that its admission was prejudicial under the circumstances. It is clear that the jury must have been aware in a general way of the fact that the estate was of material value.

■ (2) Evidence that the appellees did not assert a claim of forgery until the will was offered for probate would have proved nothing, and it was not error to reject that evidence.

■ (3) Concerning the evidence that the appellees did not use as a witness a handwriting expert they had employed, the appellant seeks to invoke the rule that, where a party does not produce material evidence in his possession and under his control, there is a presumption that the evidence would be unfavorable to him. We are not aware that this rule has ever been applied to an expert witness whose testimony would be merely an opinion. In addition, the witness was available to the appellant, and his testimony therefore was not within the possession and under the control of the appellees, within the meaning of the rule.

■ .(4) The .point that minor irregularities and discrepancies in handwriting tend to prove genuineness rather than forgery was brought to the attention of the jury in several ways, and it therefore was not error to refuse to permit the point to be made again with respect to one particular letter in the signature on the will.

■ The alleged misconduct of the jury has relation to two incidents. One was set forth in an affidavit of an attorney, not interested in the trial, stating that he saw one of the contestants of the will shake hands with one of the jurors during a recess in the trial. The contestant and the juror made affidavit that the handshaking did not occur. The other incident consisted of a conversation between a juror and the handwriting expert for the contestants, of some 10 or 15 minutes' duration, which took place during a recess after the close of the evidence. Two of the attorneys for the widow made affidavit that they saw the two men in conversation in the lobby outside the courtroom, but did not hear what was said. The juror and the handwriting expert, in counter affidavits, admitted the conversation but stated that they talked only about operations they had undergone and about a. doctor in Tennessee who was a mutual acquaintance, and they did not discuss the case being tried.

The incidents here complained of are similar to those in Bee's Old Reliable Shows v. Maupin's Adm'x, 311 Ky. 837, 226 S.W.2d 23, in which the court held that the misconduct was not such as to require that the swearing of the jury be set aside. Also, in C. V. Hill & Co. v. Hadden's Grocery, 299 Ky. 419, 185 S.W.2d 681, it was held that a casual conversation between defendant's counsel and one of the jurors, in which the case was not discussed, was not prejudicial error. See also Louisville Ry. Co. v. Masterson, 96 S.W. 534, 29 Ky.Law Rep. 892; Chesapeake & O. Ry. Co. v. Moore, 181 Ky. 550, 205 S.W. 594. It is our opinion that the conduct of the jurors in this case, though improper, was not harmful to the extent of requiring that a new trial be granted.

■ The verdict was concurred in by only 10 of the jurors and therefore, under KRS 29.330, was required to be signed by the individual jurors who agreed to it. The form of the verdict was as follows: First appeared the signatures of the 10 jurors; next, the statement, "We, the jury, do agree that John G. Whitcomb did not write the will"; and below that, the signature of the foreman. The appellant contends that the verdict was not valid because the 10 jurors did not sign at the bottom. This is on the theory that KRS 446.060, requiring the signature of a "party" to a writing to be at the bottom, applies to jury verdicts. Whether this statute does apply to jury verdicts is doubtful, but even if it be assumed that the statute does apply, the question could be raised only by motion or objection at the time the verdict was returned, and not in a motion for a new trial made after the jury had been discharged. Old 76 Distillery Co. v. Morris, 234 Ky. 389, 28 S.W.2d 474; Pardue v. Pardue, 312 Ky. 370, 227 S.W.2d 403.

The judgment is affirmed.