Amon ARNDELL, Amos Arndell and Ervin Arndell, Appellants,

v.

Mary Evelyn PEAY and her husband, J. G. Peay, and N. A. Arndell, Appellees.

Amon ARNDELL, Amos Arndell and Ervin Arndell, Appellants,

v.

David MARTIN, Executor under the purported Will of N. A. Arndell, Mary Evelyn Peay, J. G. Peay, Eunice Cottrell, Bonnie Mc-Pherson, and Riverside Missionary Baptist Church, Appellees.

Court of Appeals of Kentucky.

Feb. 10, 1967.

J. Granville Clark, Russellville, for appellants.

C. Terry Earle, Greenville, for appellees.

CULLEN, Commissioner.

In these consolidated actions, one involving the will of N. A. Arndell, deceased, and the other involving a deed executed by him before his death, the principal issue was whether Arndell had sufficient mental capacity to execute the instruments. A secondary issue was whether a trust, prevailing over the terms of his will, could be imposed on Arndell's property on the ground that mutual wills previously made by Arndell and his wife were contractual in nature. The actions were tried together before a jury, which after several hours of deliberation was unable to agree. Thereupon the judge directed a verdict in favor of the deed and will and against the existence of a trust. The contestants of the deed and will, who are the three sons of Arndell, have appealed.

Arndell had three sons (the contestants-appellants) and two daughters (who are some of the contestees-appellees). By the deed Arndell and his wife, both in their early eighties, conveyed his farm to one of the daughters and her husband, in consideration of their caring for the grantors for the rest of their lives. Mrs. Arndell died two months after the deed was executed and Mr. Arndell died ten months later. By his will Arndell left the remainder of his property, consisting of cash and investments, to the two daughters, except for bequests of $1.00 each to the three sons.

Around one year before the deed was executed Arndell and his wife had executed separate but identical wills, by which each left his entire estate in fee simple to the other if surviving, otherwise to the five children in equal shares. The wife's will was not probated after her death and there is no showing that she had any appreciable estate. Mr. Arndell's later will of course had the effect of revoking his mutual will, but the argument is made, as hereinbefore mentioned, that the first wills created a trust for the benefit of the five children which is enforceable despite the revocation.

We shall first consider the issue of lack of mental capacity.

The lay evidence for the contestants was that prior to his undergoing a hernia operation, about one month before the deed was executed, Arndell was on excellent terms with his sons, he enjoyed their attentions and services, and he had equal affection for all five children. However, shortly after the day of the operation he became imbued with the idea that the sons had mistreated him and his wife, he complained to other people that the sons had never done anything for him, and he brought up alleged misdeeds of the sons which happened 20 or 25 years previously. He gave a deposition in the suit involving the deed (brought

before his death), in which he accused the sons of being "liars," "thieves," "cheats," and "murderers". The general import of the lay testimony was that Arndell suffered serious delusions as to the kind of relationships that had prevailed between him and his sons.

The doctor who performed the operation testified upon the basis of his personal observation and hypothetical facts with reference to Arndell's conduct and attitudes after the operation, embracing the times when the deed and will were executed, that Arndell was suffering from senile dementia and did not have mental capacity to execute either document. The appellees argue that use of the hypothetical facts was improper because some of them were controverted. However, the rule is that hypothetical questions may be based on facts as to which there is conflicting testimony. Vogt v. Keller, 289 Ky. 486, 159 S.W.2d 29. The appellees suggest also that the doctor was not qualified to testify as to mental condition because he was simply a general practitioner, but it has been held that the lack of specialized training by a doctor goes only to weight and not to competency. See Kabai v. Majestic Collieries Co., 293 Ky. 783, 170 S.W.2d 357.

Another doctor who examined Arndell after the deed and will had been executed testified that on the basis of his examination he believed Arndell had capacity to execute the instruments. However, when Arndell's deposition was brought to the doctor's attention, on cross examination, he said that considering the statements made by Arndell in the deposition he would be of the opinion that Arndell did not have the capacity to execute the deed or the will.

We think the evidence for the contestants clearly was sufficient to create a jury issue as to mental capacity and that the trial court erred in directing a verdict in favor of the deed and will. See Prichard v. Kitchen, Ky., 242 S.W.2d 988; Hollon's Executor v. Graham, Ky., 280 S.W.2d 544;

Pardue v. Pardue, 312 Ky. 370, 227 S.W.2d 403.

We come now to the question of whether the mutual wills that had been executed by Arndell and his wife were contractual in nature so as to create a trust. They did not contain contractual language and there is no direct evidence of a contract, so if a contract is to be found it must be by inference. The facts relied upon by the appellants to raise such an inference are that the wills were reciprocal in their terms, and were executed by husband and wife at the same time.

According to the great weight of authority, the fact that separate wills drawn by the same scrivener and executed by husband and wife at the same time, contain reciprocal or similar provisions and indicate a common purpose is not alone sufficient evidence of a contract between the testators. See 57 Am.Jur., Wills, sec. 732, p. 498; Annotation, 169 A.L.R. 74; 97 C.J. S. Wills § 1367bb, p. 321.

The decision of this Court in Gilliam v. Gilliam, 306 Ky. 102, 206 S.W.2d 199, is in accord with the general rule. The opinion said, 206 S.W.2d at p. 200:

"* * * Mr. and Mrs. Gilliam may have made similar wills on the same day, but there is nothing whatever in the will offered by Mrs. Gilliam which would indicate on its face any evidence of a contract to make joint wills."

A departure from the general rule seems to have been made in Boner's Adm'x v. Chesnut's Ex'r, Ky., 317 S.W.2d 867. Perhaps the fact that the wills in that case specifically referred to each other, and the fact that the wills made equal provision for the heirs of the husband and those of the wife, added enough extra weight to the scale to warrant the inference of a contract. See Annotation, 169 A.L.R. 74. In any event, we are not disposed to extend the application of that case beyond its particular fact situation.

Wright v. Wright, 215 Ky. 394, 285 S.W. 188, relied upon by the appellants, is not in point because there the finding of a contract rested on direct testimony of a specific contract, and not on inference.

It is our conclusion that the trial court correctly ruled that the mutual wills were not contractual.

To the extent that it denies the existence of a trust the judgment is affirmed; otherwise it is reversed with directions for further proceedings in conformity with this opinion.

All concur.